MARY McCREA v. PINE TP. SCHOOL DIST.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS
NO. 1 OF ALLEGHENY COUNTY.

Argued October 27, 1891—Decided November 9, 1891.
[To be reported.]

1. Under paragraph V., § 23, act of May 8, 1854, P. L. 622, empowering
boards of directors of the public schools to dismiss teachers for incom-
petency, cruelty, negligence, or immorality, a school board, in exercis-
ing the jurisdiction thus conferred upon it, acts in a quasi-judicial capacity,
and is held merely to the observance of good faith.
2. In an action by a teacher for salary, the dismissal of the plaintiff for
incompetency, if regularly made and properly entered upon the minutes,
in accordance with the requirements of § 4, act of April 11, 1862, P. L.
472, is conclusive, unless the board be shown to have acted corruptly,
or in bad faith, or to have clearly abused its powers: Whitehead v.
School D., ante, 418.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WIL-
LIAMS, McCOLLUM and MITCHELL, JJ.

No. 28 October Term 1891, Sup. Ct.; court below, No. 739
December Term 1889, C. P. No. 1.

To the first Monday of December, 1889, Mary McCrea
brought assumpsit against the School District of Pine township,
for salary as a teacher. Issue.

At the trial, on November 12, 1890, the following facts were
shown:

On September 16, 1889, the board of directors of the defend-
ant school district, having appointed the plaintiff as teacher of
Chapel Hill school No. 3, entered into a written contract with
her for the teaching of that school for a term of seven months,
at a salary of thirty-five dollars per month. The contract con-
tained the following clause: "Reserving the right to the board
of directors, for the time being, to dismiss the said teacher at
any time whatever, for any of the causes specified in the twenty-
third section of the act of May 8, 1854, entitled "An Act for
the regulation and continuance of a system of education by
common schools." The plaintiff, who had a proper certificate

as a teacher from the county superintendent, commenced teaching under the contract on the day of its date, and continued so to do until November 6, 1889, when she was dismissed by action of the board of directors, entered on their minutes as follows :

" Dunlap's School-House, November 6, 1889.

" Per adjournment, board met, Messrs. Lurting, Kelley, Umstead and Kidd present. Same day, in the afternoon at Chapel Hill, No. 3 ; Messrs. Lurting, Kelley, Umstead, Warner, Reynolds and Kidd present.

" We found this school in a very unsatisfactory condition ; recitations poor, deportment bad, scholars lifeless and indifferent in studies. Teacher Miss Mary McCrea displayed inability to get up any enthusiasm in studies whatever, and it appeared that she had no discipline.

" At 3.30 P. M. Miss McCrea dismissed her school, and after the scholars were all gone Miss McCrea called on the members of the board for remarks. Lurting responded to her request, and remarked that he was not at all pleased with the condition of the school, but at present was undecided whether it would be best to continue or discontinue Miss McCrea.

" Miss McCrea then called on Kidd for remarks. He followed in the same strain, except that he was decided that it was a loss of time and money to continue. Kelley remarked the school was far from being what he desired it, and he thought not much use to continue under present management ; but if the members of the board residing in the district thought it was of any use to continue and try for better, he would not object. Messrs. Reynolds' and Warner's remarks favored continuing and trying for better. Umstead remarked that the school was lifeless, no work doing at all, but was undecided what was best to do ; but at present would favor the idea advanced by Kelley. Kelley said to Miss McCrea that he thought she had better resign. Miss McCrea replied that she was employed to teach, and it was the only way she had of making a living, and she intended to teach the term out.

" Kidd asked Miss McCrea to retire, but she insisted on being present. Kidd then remarked that there was no motion before the board, and as it was evident a quorum would be in favor of continuing for a time and trying for better, that we drop the matter and proceed with other business, though, in

Statement of Facts.

his opinion, to continue was loss in every sense of the word; after which Lurting remarked that it was evident to him no good was being done, and would favor a dismissal of Miss McCrea; whereupon it was moved and seconded to dismiss Miss Mary McCrea, teacher in Chapel Hill, No. 3, for (in our opinion) incompetency to teach or govern a school under our care.

"The vote being taken, resulted as follows: Ayes, Messrs. Lurting, Kelley, Umstead and Kidd; nay, Warner; not voting, Reynolds.

"Miss McCrea was asked if she would teach the two following days, in order to make out the present month. She replied she would.          E. W. Kidd, Sec. of Board."

Members of the school board testified to the results of their obversation of the school at the visit to it mentioned in the minutes, and on other occasions, and that the plaintiff was dismissed for the cause stated in the minutes. Their testimony, and that of other witnesses, called by the defendant, tended to show that the plaintiff exhibited incompetency as a teacher and inability to govern the school. Testimony, given by the plaintiff and other witnesses called by her, tended to rebut the statements and opinions testified to by the witnesses for the defendant.

E. W. Kidd, a member of the school board, in testifying for the defendant, stated that the president of the board, Mr. Umstead, remarked to the plaintiff, before her dismissal: "You may think, Miss McCrea, that it is on account of your religion, but we didn't take that into consideration at all. Q. Why did he make that remark? A. The impression had gone abroad that Miss McCrea was a Catholic, and that on that account we were dismissing her. Q. Miss McCrea had said nothing about it? A. Nothing."

The plaintiff testified: "Q. When you were dismissed, do you remember of the president of the board making a remark? A. Yes, sir. He said, 'Now, Miss McCrea, I want you to understand this has nothing to do with religion, your dismissal;' and I didn't say anything, and Mr. Warner says, 'Well, Mr. Umstead, I think it has,' or he said something to that effect."

The testimony being closed, the court Stowe, P. J., charged the jury in part as follows:

Charge of Court below.

The plaintiff in this case says that she made a contract with the school board for a certain term of service as teacher, at thirty-five dollars a month for seven months; and all that was necessary to do on her side of the case was to show that contract, and show that the school board had refused to let her fulfil her agreement for the serving of that time; that they discharged her before the expiration of the term of service. That would give prima facie a right to her to recover compensation for the whole term. She says she could not get any other service; and consequently, if she is entitled to recover anything, it is for the five months that she did not serve when willing to serve, and when the defendant would not let her serve, at thirty-five dollars a month.

School boards have supervisory power over their teachers, and have a right to discharge for certain reasons. . . . . . If the school board are satisfied, by proper evidence, of incompetency, cruelty, negligence, or immorality, on the part of the teacher, they have the right at once to terminate the contract, and then the teacher cannot recover anything for the time not actually served. [ In this case, they allege that they did discharge this plaintiff on account of incompetency and neglect of duty, and it is for you to determine, under all the testimony in the case, whether or not they had sufficient reason for coming to that conclusion.] [3]

The fact that the law gives them the right to discharge for incompetency, does not give them such dictatorial power as that the members of the board may meet just at their pleasure and get rid of a teacher they do not want, for some other reason, or for any reason except that given them by the law. They cannot simply meet and resolve that the teacher is incompetent or immoral, and say that she is to be discharged, without assuming the responsibility of vindicating their action, if the occasion arises in court for giving some reason. My first impression was a little the other way; I thought that where they fell within the term at all, they had an absolutely discretionary power, but I am satisfied that is not the position that ought to be taken, nor is it the position taken by defendant's counsel in this case. He does not pretend to say, as I understand it,—at least the point does not suggest it,—that they are mere dictators; that they may employ a teacher, male or female, for

seven months, and then meet and resolve, without some reason for coming to that conclusion, that the person is immoral, or incompetent, and discharge him without being held responsible in court for a misuse of their power. . . . .

[The defendants here say they saw and learned from their own observation by going to the school, that it was improperly managed, carelessly attended to, negligently taught, and that then and there they, from knowledge thus derived, had sufficient cause to come to the conclusion that the teacher was anything but competent, was negligent in her duties so as to make her unfit to be retained in the school, and they discharged her: and they have stated their reasons as appears upon the minutes. If you believe they had reasonable cause for that, then that ends the case, so far as the plaintiff's claim is concerned, and your verdict should be for defendant. . . . . These parties, however, have undertaken, upon their own assumed knowledge, to discharge her; and now it is for you to determine whether or not, under the testimony in the case, they have shown a reasonable excuse; not satisfied you, as I take it, beyond a reasonable doubt that they were right, but have they shown you a fair ground for believing that they were acting honestly and in good faith?] [4]

The reasons alleged for the dismissal of the plaintiff are such as the law recognizes as sufficient for dismissal. [If the school board honestly and in good faith dismissed her, because they were satisfied, from what they saw and learned of their personal knowledge, that she was incompetent or unduly negligent and careless in the performance of her proper duties, she cannot recover in this suit, because the discretion is vested by law in the board to determine that fact. But, on the other hand, if the jury should be satisfied from the testimony that the reasons assigned were not the true ones, and that there was not a reasonable ground for the conclusion arrived at by the board, but that, for some other reason not recognized by law, the board merely used the legal power vested in them as a cover to dismiss for a cause not recognized by law; or, in others words, that the dismissal was for some cause other than what was alleged or assigned, or that the cause assigned was no proper reason for arriving at the conclusion that the board say they arrived at, she may recover in this suit.

Charge of Court below.

So far as the evidence directly shows, the plaintiff was discharged for the cause assigned; that is, these parties swear that that was the cause, that they acted in good faith, and that they had sufficient reason in their estimation. If you are satisfied, from all the facts and circumstances under which the discharge was made, that the reasons assigned were not the true ones, that they were a false pretence, and that the board was induced to discharge from some other reason not disclosed at the time or now, or that they had no sufficient reason for arriving at the conclusion they said they arrived at, the fact of incompetency, then you must find for defendant.] [5]

Whatever our opinion of the evidence in this case may be, we think the question is not one of law for the court, but of fact for the jury. Counsel has asked us to say that under all the evidence the plaintiff cannot recover. That we decline to do, and say we think it is a question solely for the jury, a question of fact and not of law. If you believe the school board acted honestly, and had reasonable cause for thinking that the plaintiff was incompetent or negligent in the management or control of the school, she cannot recover; but if you should think that the defendant acted without any reasonable ground or cause, or that, in other words, what the board saw and knew personally from their own observation was not a reasonably sufficient cause for thinking she was not a competent teacher, or that she was unfit for the position that she held as a teacher, she can recover the amount of the salary for the balance of her term.

Counsel for defendant has requested me to say to you:

1. That under all the evidence, the jury should find for the defendant.

Answer: Refused.[1]

4. Under the plaintiff's statement of the case and the evidence, the plaintiff cannot recover.

Answer: Refused.[2]

—The jury returned a verdict for the plaintiff for $182.83, and judgment was entered thereon; whereupon, the defendant took this appeal, assigning for error:

1, 2. The answers to defendant's points.[1] [2]

3–5. The parts of the charge embraced in [ ] [3 to 5]

Arguments.

*Mr. M. A. Woodward*, for the appellant:

What becomes of the discretionary power as to the dismissal of teachers, conferred upon school boards by paragraph V., § 23, act of May 8, 1854, P. L. 622, if their judgment is to be subject to review and reversal, and the district to be subjected to a liability for damages, upon the judgment of a jury in an action like the present? This is inconsistent with the essential idea of discretionary power: Judges v. People, 18 Wend. 79. In dismissing a teacher, school boards exercise quasi-judicial powers. The acts of an officer exercising such powers, whatever the name of his office may be, are within the principles applicable to judicial acts: Mechem on Public Officers, §§ 638, 639; Burton v. Fulton, 49 Pa. 151; Chamberlain v. Clayton, 56 Ia. 331 (41 Am. Rep. 101); Elmore v. Overton, 104 Ind. 348 (54 Am. Rep. 343); Dritt v. Snodgrass, 66 Mo. 286 (27 Am. Rep. 343). There is not a particle of evidence justifying the submission to the jury of the question whether the reasons assigned by the board for the plaintiff's dismissal were the "true ones," or were given by way of "false pretense."

*Mr. C. C. Dickey*, for the appellee:

1. The relation between the school district and a teacher is that of master and servant. She is not a public officer, but an employee of a corporation: Hightower v. Slaton, 54 Ga. 108 (21 Am. Rep. 273); Dewey v. School Dist., 43 Mich. 480 (38 Am. Rep. 206). The act of May 8, 1854, P. L. 621, in providing for the dismissal of a teacher for cause, was merely declaratory of the common-law rule that a failure of the servant to perform his part of the contract absolves the master from the obligation to pay wages. Whether the plaintiff was competent to teach, was a pure question of fact, to be determined in the usual way. The instructions of the court were therefore more favorable to the defendant than it had a right to ask.

2. If the position of defendant be the law, the independence of our public school teachers will be greatly limited, and they will become the slaves, not the servants of the school directors. The public interests are quite as safe in the hands of a court and jury as in the hands of the average country-school board; and the plaintiff's certificate of competency, received from the county superintendent of schools, is certainly as unimpeachable

as the vote of the school directors. In this case, too, she was dismissed without an opportunity to defend herself and to produce witnesses, which was illegal: Commonwealth v. German Soc., 15 Pa. 251. The true reason of her dismissal appears to be that she differed in religion from the school directors, and the evidence fully justified the submission of this to the jury.

OPINION, Mr. JUSTICE CLARK:

Under the twenty-third section of the act of May 8, 1854, P. L. 621, a board of school directors has the power to dismiss a teacher in its employment, for incompetency, cruelty, negligence, or immorality; and this power was expressly reserved in the contract in suit. In Whitehead v. School Dist., ante, 418, a case from Westmoreland county, heard at the present term, we held that a board of school directors, as a deliberative body intrusted with the government of the common schools, had jurisdiction under the act to pass upon any charge of this kind, and in its determination was held merely to the exercise of good faith. We said, in substance, that by the fact of his employment the teacher submitted himself to the jurisdiction of the board, upon any charge of incompetency, cruelty, negligence, or immorality, which might be preferred against him; and that the action of the board, if it be properly entered upon the minutes in the form and manner required by the statute, in case of a dismissal is conclusive, unless the board can be shown to have acted corruptly or in bad faith, or to have clearly abused its powers.

The board, by the statute, is empowered both to employ teachers, and for any one of these causes to dismiss them. It would greatly impair the government and efficiency of the common schools, if the honest judgment and discretion of the board, exercised in good faith, could be reviewed and reversed by a jury. Such a policy would place the practical management and control of the schools on very precarious and uncertain ground. Every consideration of private interest, or of public policy, requires that this quasi-judicial power of the board should be recognized. The absolute impossibility of placing the jury in the position of the school board, with the school and its instructor before them, demonstrates the fact that it would be unwise and impracticable to do otherwise.

Opinion of the Court.

Of course, as suggested by the superintendent of public instruction, " the removal of teachers is in all cases to be very cautiously effected.  The law specifies the causes for dismissal; and it is alike due to the dignity of the board and the rights of teachers, that no one should be displaced except on the clearest proof, and after thorough investigation if necessary : " School Laws & Dec., 1887, 48.   And it is equally true that a teacher wronged in this respect, that is to say, through fraud or oppression, may seek redress by suit against the members of the board for damages.  But the control and government of the schools is given to the board of directors, who have peculiar opportunities of judging, and their action, if taken in good faith, is final.

This board of school directors investigated the charge of incompetency, by personal visitation of the school in their official capacity, and decided the question, in the teacher's presence, upon their own knowledge of what they saw and heard.   The decision of the board to dismiss was regularly entered upon the minutes, in the form prescribed by the statute, and the minutes were of course the proper evidence of the fact.   In this view of the case, it is plain that, in the absence of any evidence that the members of the board acted corruptly or in bad faith, or that they were guilty of any clear abuse of their powers, the jury should have been instructed, at the defendant's request, to find for the defendant.

The judgment is reversed.*

---

* This was the last opinion delivered by Mr. Justice CLARK.   He was last on the Bench on November 6, 1891 ; on November 20th, he died. See proceedings In Memoriam, 144 Pa. XXI.