# CHARLESTON

JAMESON V. BOARD OF EDUCATION, DISTRICT OF UNION.

Submitted February 25, 1914.    Decided May 12, 1914.

1. SCHOOLS AND SCHOOL DISTRICTS—*Contracts With Teachers—Validity.*

   The statute not requiring it, contracts with teachers when appointed by boards of education need not be in writing.    (p. 391).

2. SAME.

   Where a teacher who has taught the previous year makes verbal application to the president of the board of education for reappointment, upon the same fixed and definite terms as the previous year, and is assured by him of her re-appointment, and thereafter at a regular meeting of the board at which he is present and participating and when all other teachers of the district are duly elected or appointed, such teacher is in fact re-elected or appointed to such position on such terms, such action of the board amounts to acceptance of the offer and completes a valid and binding contract between the parties, irrevocable by such board except for causes prescribed by statute.    (p. 393).

3. SAME—*Notice by Teacher of Acceptance of Appointment Given to President of Board of Education is Notice to the Board.*

   And if after such re-appointment or election to such position of teacher verbal notice be given the president by such teacher of his or her acceptance thereof, such notice is notice to the board; and on the theory that such election or appointment constitutes a mere proposal by the board, such notice to the president is likewise notice to the board, and constitutes acceptance of such offer by the teacher and completes a valid and binding contract, irrevocable except for causes prescribed by statute.    (p. 397).

4.  SAME—*Appointment of Teacher—Abrogation by Marriage.*
    Marriage of a female teacher after being so appointed or elected
    by a board of education is not of itself good ground for revocation
    by such board of its action or the abrogation of its contract.   (p.
    398).

    (ROBINSON, JUDGE, dissenting.)

Error to Circuit Court, Marshall County.

Action by Hallie Janes Jameson against the Board of Education of Union District. Judgment for defendant, and plaintiff brings error.

*Reversed, and judgment entered.*

*Martin Brown,* for plaintiff in error.

*John P. Arbenz,* for defendant in error.

MILLER, PRESIDENT:

Plaintiff, on November 13, 1911, sued before a justice, and obtained judgment for $150.00, salary as music teacher for the first two months of the school year beginning September 11, 1911, at the rate of $75.00 per month. On appeal by defendant to the circuit court she there obtained a verdict for the same amount, which on motion was set aside and the defendant awarded a new trial, and on a writ of error awarded her we are now asked to reverse that judgment and pronounce judgment on the verdict in her favor.

Plaintiff had been appointed and served as music teacher at the same salary during the preceding year, and after application to the president, was, at a regular meeting of the board, on July 3, 1911, when all the other teachers were appointed, re-appointed at the same salary for the year beginning September 11, 1911.

Plaintiff was Miss Hallie Janes. On July 20, 1911, she was married to J. F. Jameson, and two days afterwards, through her husband, she notified the president of the board of her acceptance of the position, and that she proposed to go on with the work the next year.

The president admits this notice, but says that it was given in a social conversation, and that he at that time told Mr. Jameson, "in conclusion, that I rather suspected that she had better tender her resignation, as it was the precedent

that had been established, that we had not been having any married women to teach in the schools.''

This was the only information plaintiff appears to have had of any objection to her teaching, until about August 11, 1911, when she received a letter from the superintendent of schools, expressing regrets, and saying that the board would not meet ahead of schedule time, August 8, and that when they did meet they were obdurate, and could not be changed, and had declared her place vacant, and that they stood a unit against the employment of a married woman.

After the school year began plaintiff presented herself regularly every school day at the different schools where she was appointed to teach, and was denied the right, and was told by the different superintendents that she would not be permitted to do any teaching.

On the motion for a new trial the court below was of opinion that the evidence showed no contract between the parties, that it did not appear that the minds of the parties had ever met in a binding contract. The sole question presented for decision, therefore, is, was there a binding contract between the parties?

One point urged in support of the judgment, not noted in the opinion of the circuit judge, is that the alleged contract was not in writing. Plaintiff was appointed music teacher, not for a sub-district, by sub-district trustees, but by the board of education of the district, and to teach music in the schools throughout the entire district. While by section 56, chapter 45, serial section 2097, Code 1913, the appointment of teachers by sub-district trustees, must be in writing, according to the form prescribed by the state superintendent of free schools, and filed with the secretary of the board, by section 65, of the same chapter, serial section 2106, as construed in *Hines* v. *Board of Education,* 49 W. Va. 430, and *Board of Education* v. *Holt,* 51 W. Va. 437, sub-district trustees are or were under the supervision and control of the board of education. Now, however, by section 164, of the same chapter, serial section 2238, Code 1913, a new section added by Acts of 1908, in force when the alleged contract involved here was made, ''The board of education may take charge of schools so supervised and appoint the teachers

therefor and may provide that all the schools in the district shall begin on the same date.''

The preceding section, also new, provides for the appointment of district superintendents by boards of education. In *Robinson* v. *Board of Education*, 70 W. Va. 66, construing this section, we said, that a board of education might, by proper action at a regular meeting, employ such a district superintendent without a written contract, the statute not requiring the contract to be in writing, and this seems to be the rule generally with respect to contracts by public corporations. Section 56, of the same chapter, serial section 2097, Code 1913, requiring contracts made with trustees of subdistricts to be in writing and filed with the secretary of the board, was evidently that the board of education might have a record of all such contracts for its information. When contracts with teachers are made directly with the board it has record thereof by its minutes, and needs no other evidence thereof for any practical purposes. Wherefore the absence of any such requirement when the contracts are made directly with the board.

We do not see that *Lance* v. *McCoy*, 34 W. Va. 416, is authority against this construction of the statute. That case related to the appointment of a committee. for an insane person. It seems that the statute at that time required notice where the appointment was by the circuit court, but no notice was in terms required where the appointment was by the county court, both courts then having concurrent jurisdiction of the subject of such appointment. It was decided, however, that notice was also required as well where the appointment was by the county court as when made by the circuit court. This was clearly a proper construction of the statute to render the proceedings thereunder due process of law. The necessity for that construction is therefore apparent. But there is no necessity here for supplying by construction the absence from the statute of the provision requiring contracts to be in writing, when made directly with boards of education. The general rule stated in *Robinson* v. *Board of Education, supra,* is, therefore, applicable.

On the two theories relied on by plaintiff, it is conceded, on the first, that if plaintiff's application to the president,

as to which there is little or no conflict in the evidence, constituted an application to the board, and her appointment on July 3, 1911, an acceptance thereof; or, on the second, that if her appointment by the board constituted a proposal on its part, and her notice of its acceptance, through her husband, to the president of the board, on July 22, 1911, constituted legal notice thereof to defendant, in either case she had a binding contract, entitling her to a recovery. The learned judge below concluded on a motion to set aside the verdict that plaintiff had failed to make out a case on either theory, and set aside the verdict. In this we think he clearly erred.

To support her first theory plaintiff was permitted to prove the manner and method of her application and appointment the previous year. She proved by the secretary that he did not remember, but did not think she had made a written application, and by the minutes of the meeting of July 5, 1910, introduced in connection with his evidence, she proved a resolution that "the board employ a music teacher who shall teach music in all the schools of Benwood and McMechen"; that witness was not sure the board then had a written application, but that on August 9th, as the minutes introduced with his testimony shows, "Miss Hallie Janes was appointed music teacher, at a salary of seventy-five dollars per month." The witness proved that under the appointment thus made for the previous year Miss Janes taught music and received the salary voted her for the entire year.

And respecting plaintiff's appointment or employment for the year now in question, plaintiff proved by the same witness and by the minutes of the meeting of the board of July 3, 1911, at which all the members were present, the appointment of various trustees of sub-districts, the establishment of certain schools, and that after these actions the board went into the election of teachers for all the schools in the district, first, the appointment of H. L. Pedicord, superintendent of schools, and following his appointment the record reads as follows: "Teachers were appointed as follows", and after reciting the names of the teachers for the several districts the following: "Music Teacher—Hallie Janes", after this the minutes show the salaries fixed for the different grades and

74 W. Va.

for the superintendent, among these is, ''Art and music teacher, \$75.00 per month.''

There is not the slightest evidence on the face of these minutes that the appointment of any of these teachers, from superintendent down, was made upon written applications, or indeed upon any formal applications, or that the action respecting plaintiff was any different from that of any other appointee. On cross-examination, the secretary testified, that so far as he knew plaintiff had made no application to the board of education for her position, using his language, ''We just assumed that she wanted the position again, and they appointed her with that understanding.'' He admits that after this action neither the board, nor himself as secretary, gave any notice to Miss Janes of her appointment, and says, he, as secretary, received no acceptance from her.

Plaintiff proved by her own evidence that before her appointment the first year, being asked to do so by the superintendent of schools, Mr. Pedicord, she made application through him for that year, and that she was appointed on that application for the year 1910-1911, and had received no notice of her appointment, except through him. She also swore that a week before the meeting of the board in July, 1911, she wrote Mr. Pedicord that she expected to take the work which she had been asked to take, and requested that she be considered an applicant at that meeting; that she also went to see the president of the board on July 1st, and applied to him for the same position she had held the year before, and on the same terms as to salary, and that he had assured her that she should have the position.

Do these facts establish a contract on the first theory relied on? We think they do. We cannot accept the theory of the defense that the appointment of plaintiff on July 3, 1911, amounted to a mere offer to employ her. Her appointment was made along and in connection with the appointment of all other teachers, and is in the same character of language. The record is not in form an offer; application in writing was not required. If made orally either directly or to a member of the board, by herself or by any one on her behalf, if acted on favorably, it made a binding contract. That plaintiff made application through the superintendent by his re-

quest, and directly to the president, is fully proven. Presiding on July 3, 1911, the president knew of this application. Notice to him was then notice to the board. As the court below observed, there is some conflict of authority, as on most questions, as to when and whether knowledge of one member of a board, while sitting with the others, of a fact which he ought to communicate, but does not, will bind the board. 10 Cyc. 1057-1058; 2 Thompson on Corporations, sections 1668-1669; *Farrel Foundry* v. *Dart,* 26 Conn. 376. But we think the apparent inharmony among the decisions is due to the failure to distinguish between those cases where a director with notice is absent at the time of the action by the board, or is interested otherwise than as director and adversely to the corporation, in the subject matter of its action. When he is not absent, and is not so interested notice to him is generally notice to the corporation. *Bank* v. *Oil and Coal Co.,* 66 W. Va. 507; *Bank of Bluefield* v. *Ritz,* 70 W. Va. 409.

But whatever may be the correct rule, as applied to corporations generally, our statute, section 8, chapter 45, serial section 2043, relating to boards of education, says that: "Process and notice may be served on said corporation by delivering a copy thereof to the secretary or any member of the board." Process of a court and notice in writing are no doubt intended by this statute, but if such notice, served on a single member of the board or secretary, will bind it though not communicated to the other members, why will not notice or application to teach, and particularly when it has apparently been acted upon, likewise bind the corporation? We can perceive no reason for distinction. It is certainly among the duties of members of a board of education, and particularly its president, to receive the applications of teachers. A corporation will always be affected when notice comes to it through an officer within whose special line of duty the matter in question lies. Wade on Notice, (2nd Ed.) section 683b. The court below seems to have laid stress upon section 32, chapter 45, serial section 2071, Code 1913, providing with reference to the meetings of boards of education, that "they shall do no official business except when assembled as a board." And the court also cites *Honaker* v. *Board of Education,* 42 W. Va. 170, and *Pa. L. R. Co.* v. *Board of Edu-*

*cation,* 20 W. Va. 360, in support of its judgment. We do not see that this statute or these ·decisions affect the question of process or notice. Certainly the president of the board or any member thereof is qualified to receive an application for the position of teacher. This requires no quorum or action of the board. Such act of the president or members of the board is not business transacted within the meaning of the statute, or decisions referred to.

That the minds of the parties did meet to make a binding contract ·of employment is a proposition supported by *Weatherly* v. *Mayor, etc. of Chattanooga,* (Tenn.) 48 S. W. 136. The facts in this and that case are almost identical. In that, as in this case, plaintiff, who had been employed in the same position the previous year, had made no formal application in writing, but had spoken to one or two members of the school board, and in that case, as in this, plaintiff had been elected or appointed along with all the other teachers at the same meeting. It was held that the application thus made and the election thereon constituted a binding contract. Defendant's counsel here would distinguish that case from this in that in the Tennessee case the committee on teachers and salaries reported that they had carefully examined the applications for positions as teachers and officers of the city schools, had impartially considered the same, and recommended a list of teachers which included the name of the plaintiff, and plaintiff, was according to the minutes of the board, elected principal of the manual training·school. We do not think this fact distinguishes that case from this. Counsel for the defendant argues that although the proof in that case showed no formal application in writing, it is necessarily implied from the report of the committee that application was formally made by some one on behalf of plaintiff. We think that the action of the board in this case showing the appointment of plaintiff along with all other teachers necessarily implies an application on her behalf, as much so as by or on behalf of any other teacher appointed at the same time. We do not see how it can be fairly contended from the character of the record made that the action of the board was intended as a mere proposition or offer to the teachers and officers appointed or elected. A case relied upon

by defendant is *Roberts* v. *Clay City*, (Ky.) 42 S. W. 909. While the action of the board in that case was held to be a proposition requiring acceptance, that was because the terms of the employment had not been definitely fixed and determined. The court says: ''The record recites that appellant was selected as teacher, but, when it comes to fixing compensation, it is declared that the principal receive $55 per month, and the assistant $45, 'and this apportionment is recommended.' '' The court then proceeds: ''This language is peculiar. It certainly implies that there was to be some further consideration on this question by somebody. The apportionment of the salaries was not final. It was simply a recommendation, and the record does not specifically state to whom this recommendation was made. It does not apply to the assistant teacher alone, as the principal teacher was interested in this matter equally with the assistant. It was evidently a suggestion or proposition on the part of the council, made to the principal and assistant teachers, as a proper adjustment of the proportion of the public funds which each of them should receive for his services, and before it became a final contract, binding upon the defendant, required an acceptance of the proposition, not only by the plaintiff, but also by the principal teacher, who was equally interested with him. There is no evidence tending to show that such an agreement was ever reached between the principal and assistant teachers as to the proportionment suggested, or that any other contract, either in writing or by parol, was ever made by the city with the plaintiff, pursuant to this resolution, until the marshal, at the suggestion of defendant, requested appellant to sign the contract at $35 per month as a condition of employment; and, as he refused to do this, we do not think he has shown himself entitled to recover in this action.''

On the other theory of her case plaintiff was permitted to prove notice to the president, through her husband, on July 22, 1911, of her acceptance of the appointment, and her purpose to teach under the terms of the contract, for the then ensuing year. This was before any revocation or attempted revocation of the board in employing her, and though the president swears that he then said to plain-

tiff's husband that because of her marriage she had better resign, this did not amount to action by the board, binding her or it. The attempted action of revocation did not come until August 8, 1911. If we are correct in our holding, that notice to the president was notice to the board, it was too late on August 8th, to revoke the appointment, for the contract had then become a binding one, revocable only for causes provided in the statute. The authorities already referred to support this proposition.

Lastly, was plaintiff's marriage after her appointment good ground for revocation? While the fact of marriage was evidently the one, and the only one, on which defendant founded its action, it is apparently not relied upon, for it was not covered by briefs or oral arguments. The only grounds of removal prescribed, by section 58, chapter 45, serial section 2099, Code 1913, are "incompetency, neglect of duty, intemperance, profanity, cruelty or immorality." Marriage is not covered by any of these, and therefore does not constitute in and of itself ground of removal. This subject has been recently before the courts of New York, in the case of *People v. Board of Education*, 144 N. Y. S. 87, Supreme Court, New York County, November. 15, 1913, and on appeal in the Supreme Court, Appellate Division, First Department, February 6, 1914, 145 N. Y. S. 853. The court in the first case held, under the statute of New York, similar in its provisions to our own, that a female teacher in the public schools could not be removed because of her marriage. On appeal, the appellate division reversed the judgment, not upon the ground of marriage, but for other reasons, and among other things held, point 1 of the syllabus, "that the absence of a married woman teacher that she might bear a child might be of such length as to give the board of education jurisdiction to remove her for neglect of duty, though she might not be removed on that ground merely because of absence for that purpose." We have no question of absence or neglect of duty, or other ground of removal present in this case. As marriage is not a ground of removal under the statute of this state, the action of the board in removing plaintiff, or in revoking or attempting to revoke its action is unfounded.

Our conclusion is, therefore, to reverse the judgment below, re-instate the verdict, and enter judgment thereon for the plaintiff.

*Reversed, and judgment entered.*