SCHOOL CITY OF ELWOOD ET AL. *v.* STATE, EX REL. GRIFFIN ET AL.*

[No. 26,145. Filed March 29, 1932. Rehearing denied June 30, 1932.]

* Reported and annotated 81 A. L. R. 1027.

*Ralph Daly* and *Sid M. Cleveland,* for appellants.
*Oswald Ryan* and *Arthur A. Beckman,* for appellees.

MARTIN, J.—Mattie Griffin, a teacher in the public schools of the city of Elwood, instituted this action in mandamus to compel the school trustees of that "school city" to restore her to such teaching position. (The action was brought in the name of the State on the relation of Mattie Griffin, as provided in §§1244, 1245 Burns 1926, and was later consolidated with two other like actions instituted on behalf of Grace Doerman and Mary L. Records.)

The complaint alleged that relatrix was a "permanent teacher of such school corporation and the holder and possessor of an indefinite contract as a public school teacher under and by virtue of the laws of the state," (ch. 97 Acts 1927, §§6967.1-6967.6 Burns Supp. 1929)[1]

_Note 1._ This statute, known as the Teachers' Tenure Law, was enacted under the following title: "AN ACT defining teachers and permanent teachers, providing for their employment and release, and defining, and providing for the making and cancelling of, indefinite contracts."

Section 1 provides in part that "any person who . . . shall serve under a contract as a teacher in any school corporation . . . for five or more successive years, and who shall . . . enter into a teacher's contract for further service with such corporation, shall thereupon become a permanent teacher of such school corporation. . . . Upon the expiration of any contract between such school corporation and a permanent teacher, such contract shall be deemed to continue in effect for an indefinite period and shall be known as an indefinite contract. Such . . . contract shall remain in force unless succeeded by a new contract signed by both parties or unless it shall be cancelled as provided in section 2 of this act." Provision is made in this section of the act for salary schedules to be adopted from year to year by the corporation and for other matters.

Section 2 specifies the grounds upon which, and the procedure by which, a school corporation may cancel an indefinite contract. Certain written notice to the teacher of the date and place of the consideration by the school corporation of the cancellation is provided for. Upon written request by the teacher a written statement of the reasons for the consideration shall be given; and upon like written request a hearing, before the school board (in the case of towns, and before the township trustee in the case of townships) is provided for, at which the teacher "shall have a right to a full statement of the reasons for the proposed cancellation of such contract, and shall have a right to be heard, to present the testimony of witnesses and other evidence bearing upon the reasons for the proposed cancellation of such contract."

The section provides: "Cancellation of an indefinite contract

that on February 3, 1931, the school trustees adopted a resolution that in the future no married women should be employed as teachers in the Elwood schools and that necessary steps be taken to terminate the indefinite contracts of all married women teachers in the school corporation, and notified such teachers (including written notice to relatrix on March 4, 1931), that the trustees would, at their regular monthly meeting on April 7, 1931, take up consideration of the cancellation of the indefinite contracts held by them; that on March 28, 1931, at the written request of the relatrix, the trustees notified her in writing that "the reason for said consideration of the cancellation of her said indefinite contract was that . . . the school board . . . had resolved that no married women should be employed as teachers in said school after the end of the school year 1930-1931"; that the meeting and hearing was held and the school board "did then and there unlawfully, unreasonably, arbitrarily and capriciously order that the indefinite contract of relatrix be cancelled and that she be dismissed as a teacher in said school corporation and did . . . give as their reason therefor that the relatrix was a married woman."

It is averred that relatrix has since demanded that she be restored to her rights as a permanent teacher and be allowed to retain her place as a teacher in said school corporation, which demand the defendant trustees refused and still refuse to comply with; that the sole and only reason for the action of the trustees in cancelling the indefinite contract of relatrix and in dismiss-

of a permanent teacher may be made for incompetency, insubordination (which shall be deemed to mean a wilful refusal to obey the school laws of this state or reasonable rules prescribed for the government of the public schools of such corporation), neglect of duty, immorality, justifiable decrease in the number of teaching positions or other good and just cause, but may not be made for political or personal reasons . . . Provided, That the decision of the school board shall be final," . . . etc.

ing and discharging her was that she was a married woman; that such action by the board was unlawful, unreasonable, arbitrary and without good and just cause. That it is the duty of the trustees to reinstate relatrix and restore her rights as a permanent teacher in said corporation, which duty they refuse to perform and that unless they are required and compelled by the court to reinstate her, etc., she will be deprived of her right to continue as a permanent teacher in said corporation. A prayer for an order in mandate followed.

To the complaint, the defendants (appellants) filed a plea in abatement setting up the action of the school board, viz., "the board now hereby cancels said contracts and each of them for the reason that said teachers are married and each of them are married women," which action they allege is final and not subject to any appeal or review by the court and that the court by reason thereof has no jurisdiction in the proceedings. The court sustained a demurrer to this plea in abatement. The defendants then filed a demurrer to the complaint on the grounds that the court had no jurisdiction of the subject-matter of the action, and that the complaint did not state facts sufficient to constitute a cause of action. This demurrer was overruled and upon the refusal of the defendant to plead further to the complaint, the court made a finding in favor of the three relatrices and rendered judgment thereon ordering the defendants to reinstate the relatrices in their indefinite contracts and restore to them their full rights as permanent teachers in said school corporation.

By assigning as error the sustaining of plaintiffs' demurrer to their plea in abatement and the overruling of their demurrer to the complaint, appellants present the question of whether the Madison Circuit Court had jurisdiction of the subject-matter of the action. They contend that exclusive jurisdiction

was conferred upon them as a school board by §2, ch. 97 Acts 1927, §6967.2 Burns Supp. 1929, to hear and determine the question of cancelling appellees' "indefinite permanent" teaching contracts, and that their decision of such question was final and not subject to appeal to, or review by, the courts. The Teacher's Tenure Law specifically enumerates the causes for which a teacher may be removed or dismissed and provides that "the decision of the school board shall be final." If a school board dismisses a teacher for a cause named in the statute, such action is conclusive and is not subject to review by the courts, unless the board in taking the action acted in bad faith, arbitrarily, corruptly, fraudulently or in gross abuse of its discretion. *Greathouse* v. *Board, etc.* (1926), 198 Ind. 95, 151 N. E. 411; *Keener School Township* v. *Eudaly* (1931), 93 Ind. App. 627, 175 N. E. 363, 366; 56 C. J. 409, note 69; *School District, etc.,* v. *Davies* (1904), 69 Kans. 162, 76 Pac. 409; *People, ex rel.,* v. *Hubbell* (1899), 38 App. Div. 194, 56 N. Y. Supp. 642; *Directors, etc.,* v. *Burton* (1875), 26 Ohio St. 421; *McCrea* v. *School Dist.* (1891), 145 Pa. 550, 22 Atl. 1040; *Gillan* v. *Board, etc.* (1894), 88 Wis. 7, 58 N. W. 1042, 24 L. R. A. 336. Where the statute specifically enumerates the causes for which a teacher may be removed or dismissed, the teacher cannot be removed or dismissed for any other cause, *Kennedy* v. *San Francisco Bd. of Education* (1890), 82 Cal. 483, 22 Pac. 1042; *Butcher* v. *Charles* (1895), 95 Tenn. 532, 32 S. W. 631, and where the school board in removing or dismissing the teacher acted outside of its jurisdiction or power under the statute, the action of the board is not final but is subject to review by the courts. *Courtwright* v. *Mapleton* (1927), 203 Iowa 26, 212 N. W. 368; *Custer* v. *School District, etc., of Prospect Park* (1899), 12 Pa. Super. 102.

The appellants admit that they did not take the action

complained of because of the "incompetency, insubordination . . . neglect of duty, (or) immorality" of the teachers involved, nor because of "justifiable decrease in the number of teaching positions" but contend that their action was properly and lawfully taken under the remaining ground stated in the statute, viz., "other good and just cause" i. e. a cause which bears a reasonable relation to the specific causes enumerated. If a teacher, after marriage, becomes inefficient, impaired in her usefulness, neglectful or otherwise incapable of performing her duties as a teacher in a proper manner, then good reason—"other good and just cause"—would exist for her dismissal; but marriage, in itself (in the absence of a statutory provision to the contrary), does not constitute a good and just cause (as provided in the teacher's tenure law) for the discharge of a teacher. Marriage as an institution involves no element of wrong, but, on the contrary, is protected, encouraged and fostered by a sound public policy. The arbitrary determination of the school board that the marriage of woman teachers (it is noted that the resolution of the school board attempted to operate against women only, and not against men teachers who married) was "good and just cause" for their removal is, as a matter of law, declared to be erroneous and invalid.[2] *Richards* v. *School Dist.* (1916), 78 Ore. 621, 153

*Note 2.* In the absence of statutory regulation as to the employment of teachers or in the absence of statutory causes for discharging those who under the terms of the statute are permanent teachers, the selection, dismissal and control of teachers is in the hands of the proper local school authorities, and such authorities have discretionary power in passing upon the applications and dismissals and they may take sex or marital status into consideration. 56 C. J. 379; 24 R. C. L. 618. In *Ansorge* v. *City of Green Bay* (1929), 198 Wis. 320, 224 N. W. 119, it was said: "It may be conceded that a married teacher can ordinarily perform her duties as satisfactorily as an unmarried one, but the board is charged with a duty which requires it to promote the public interests. . . . Many circumstances may exist with reference to a particular school which might lead to the belief that a

Pac. 482, L. R. A. 1916C 789, Ann. Cas. 1917D 266; *Jameson* v. *Union Dist. Board* (1914), 74 W. Va. 389, 81 S. E. 1126; *People* v. *Maxwell* (1904), 177 N. Y. 494, 69 N. E. 1092. See, also, *Blair* v. *United States, ex rel.* (1916), 45 App. D. C. 353; *State, ex rel.*, v. *School Directors* (1923), 179 Wis. 284, 191 N. W. 746. In *Richards* v. *School Dist., supra,* the court said:

"It is impossible to know in advance whether the efficiency of any person will become impaired because of marriage, and a rule which assumes that all persons do become less competent because of marriage is unreasonable because such a regulation is purely arbitrary. If a teacher is just as competent and efficient after marriage, a dismissal because of marriage would be capricious. If a teacher is neglectful, incompetent and inefficient, she ought to be discharged whether she is married or whether she is single."

The appellants say that "marriage has been held to be a legal reason for not employing a woman teacher in the schools of Indiana," but an examination of the case cited—*Guilford School Township* v. *Roberts* (1902), 28 Ind. App. 355, 62 N. E. 711—shows appellants' statement to be inaccurate; the decision there being that a married woman who secured employment by the fraudulent representation that she was unmarried, from a trus-

---

male teacher would be more suitable for employment than a female teacher. On the other hand, the same may be said with respect to married and unmarried teachers. In the employment of teachers the board must be and ordinarily is vested . . . with a wide discretion, and when such discretion is exercised in good faith and is not contrary to law, the exercise of such discretion should not be interfered with or controlled by the courts."

In *Sheldon* v. *School Committee, etc.* (1931), 276 Mass. 230, 177 N. E. 94, it was said, "A decision (by the school committee) that wise administration of public schools calls for the elimination of women teachers if they are married is not so irrational that it is inconsistent in law with good faith in dealing with a question of dismissal," but the provision of the Massachusetts statute is different from the one involved here, the court stating the provisions of that statute as follows: "a teacher who had served in the schools . . . for three consecutive years, on being again elected, should be employed 'at the discretion of the school committee.'"

tee who gave her to understand that he would not, for various reasons, employ a married woman as a teacher, could not recover on a contract which the trustee had terminated. The case did not involve one who was a permanent teacher under a statute.[3]

Appellants' contention that the complaint was insufficient to withstand their demurrer because "it was necessary to set out in the complaint or file a copy with the complaint of the alleged 'indefinite contract,'" cannot prevail. The complaint in this case was not "founded on a written instrument" which, under §386 Burns 1926, "must be filed with the pleading," but was for the enforcement of the teachers' rights arising out of the Teachers' Tenure Law, *supra*. The position of a teacher in the public schools is not a public office, but an employment by contract between the teacher and the school corporation. The relation remains contractual after the teacher has, under the provisions of a teachers' tenure law, become a permanent teacher—but the terms and conditions of the contract are thereafter governed primarily by the statute. 56 C. J. 382; see *Martin* v. *Fisher* (1930), 108 Cal. App. 34, 291 Pac. 276, 278; *State, ex rel.*, v. *Milwaukee Board* (1926), 190 Wis. 570, 209 N. W. 683; *State* v. *Blied* (1925), 188 Wis. 442, 206 N. W. 213.

It is because of appellees' rights under this statute and the duty of appellants imposed by the same that mandamus is the proper remedy in this case. §1245 Burns 1926; *State, ex rel.*, v. *Cadwallader* (1909), 172 Ind. 619, 87 N. E. 644, 89 N. E. 319;

---

*Note 3.* In *State, ex rel.*, v. *School Directors, supra*, a board of school directors, authorized to dismiss teachers for "misconduct, incompetency, inefficiency, or inattention to duty," was held not to have any sufficient ground for dismissing a teacher who failed to report her marriage from March till June, there being no showing of wilful or intentional flouting of authority or harm from her failing to give immediate notice of her marriage.

*State, ex rel.,* v. *Board* (1913), 18 N. M. 183, 135 Pac. 96, 49 L. R. A. (N. S.) 62, note 63. A public school teacher who, under a positive provision of the statute, has a fixed tenure of employment or can be removed only in a certain manner prescribed by the statute, is entitled to reinstatement if he has been removed from his position in violation of his statutory rights. *Saxton* v. *Los Angeles Board* (1929), 206 Cal. 758, 276 Pac. 998; *Dutart* v. *Woodward* (1929), 99 Cal. App. 736, 279 Pac. 493.

Under the assignments first noted above appellants contend that the classification of "permanent teachers" made by §1, ch. 97, Acts 1927, §6967.1 Burns Supp. 1929, viz.:

> "Any person who has served or who shall serve under contract as a teacher in any school corporation in the State of Indiana for five or more successive years, and who shall hereafter enter into a teacher's contract for further service with such corporation, shall thereupon become a permanent teacher of such school corporation,"

violates the provision of §23, Art. 1, Indiana Constitutioh, §75 Burns 1926, viz:

> "The general assembly shall not grant to any citizen or class of citizens privileges or immunities which, upon the same terms, shall not equally belong to all citizens."

Both parties agree as to the general rules stated in *Fountain Park Co.* v. *Hensler* (1927), 199 Ind. 95, 155 N. E. 465, 50 A. L. R. 1518, which control the determination of the question whether a statute constitutes the sort of "class legislation" forbidden by this section of the Constitution. The classification to be constitutional must be reasonable and natural, not capricious or arbitrary; it must embrace all who naturally belong to the class, and there must be some inherent and substantial difference germane to the sub-

ject and purpose of the legislation between those included within the class and those excluded.

The appellants concede that the *length of time* a teacher has taught may furnish a basis for a proper classification, *William* v. *People* (1887), 121 Ill. 84, 11 N. E. 881, but insist that *the place* where the teacher has taught cannot furnish such basis. They say there is no reason why five successive years teaching experience in various school corporations within the state should not place a teacher in the same class as the teacher who has taught five successive years in one school corporation. To sustain their positions appellants cite *State, ex rel.,* v. *Pennoyer* (1889), 65 N. H. 113, 18 Atl. 878, 5 L. R. A. 709, where a classification was held invalid which attempted to classify physicians for license purposes on the basis of practice *in a given locality* for four years preceding the passage of the act. But the case cited is not in accord with the present weight of authority, which holds that the Legislature may properly treat permanency of location as evidence of professional merit and qualification. *State* v. *Bair* (1900), 112 Iowa 466, 84 N. W. 532, 51 L. R. A. 776. The classification of permanent teachers as those teachers of a school corporation who have taught for five or more successive years therein and who shall thereafter enter into a contract for further service with such corporation seems to us a valid one. The classification is reasonable and natural and based on a substantial difference germane to the purpose of the act. A transient teacher who has taught five years, but in different school corporations, does not possess a probationary record within the direct observation of the school trustees as is possessed by a teacher who for a period of five successive years has been weighed and tested by the trustees of the corporation in which he is to become a permanent teacher. A teacher who would be satis-

factory in one district might be unsatisfactory in another by reason of different community conditions and needs.

We believe the statute under consideration is not subject to the foregoing objection, which is the only objection raised herein on constitutional grounds.

Judgment affirmed.