NEPHEW *v.* DEARBORN LIBRARY COMMISSION.

1. CERTIORARI—QUESTIONS REVIEWABLE.
   On certiorari reviewing order granting writ of mandamus Supreme Court is limited to questions of law.
2. MUNICIPAL CORPORATIONS—MARRIED WOMEN—DISCHARGE—DISCRETION OF OFFICERS.
   Under civil service amendment to home rule city charter authorizing the removal, dismissal, reduction or suspension of employees for any cause which, in the opinion of the person authorized to remove or discharge the employee, may interfere with the efficient discharge of duty, the city library commission, which had theretofore pursued the policy of not having married women on the payroll, did not abuse discretion with which it was vested in discharging employee after she married (Dearborn City Charter, Civil Service Amendment, § 8).

   SHARPE, C. J., and MCALLISTER, J., dissenting.

Appeal from Wayne; Brennan (Vincent M.), J. Submitted April 29, 1941. (Calendar No. 41,405.) Decided June 2, 1941. Rehearing denied September 2, 1941.

Petition by Luella Karnatz Nephew for writ of mandamus to compel the Library Commission of the City of Dearborn and others to restore her position as a city employee, with back pay. Writ granted. Defendants appeal. Reversed.

*Enrique Beeman* (*Clarence T. Brown* and *Lula E. Bachman,* of counsel), for plaintiff.

*James E. Greene,* Corporation Counsel, and *Richard A. Hicks,* Assistant Corporation Counsel (*Walter S. Rae,* Deputy Corporation Counsel, of counsel), for defendants.

McALLISTER, J. (*dissenting*).  Defendants appeal from the order of the circuit court of Wayne county, granting a writ of mandamus for restoration of position to a city employee, and back pay.

In November, 1935, the city of Dearborn adopted a civil service amendment to its home rule charter containing, among other provisions, the following:

"SEC. 8.  No person shall be discharged from the classified service or be reduced in pay or position or suspended by the appointing officer for or on account of his political or religious opinions or affiliations, or for refusing to contribute to any political fund, or for refusing to render any political service; but nothing in this section shall forbid the removal, dismissal, reduction or suspension of any such employee for any cause other than those hereinbefore enumerated, which, in the opinion of the person with authority to remove or dismiss such employee, may interfere with the efficient discharge of his duties."

In July, 1937, after taking an examination, plaintiff was employed by the library commission. Thereafter, upon taking another examination, she was advanced to the position of senior library assistant, in the classified service.  On December 9, 1939, she married and was thereafter, on December 31, 1939, discharged from her position, pursuant to a resolution of the library commission, which had been adopted December 5, 1939.  The resolution is as follows:

"Whereas, it has been the established policy of the library commission, since its inception in 1929, to terminate the employment of women members of the library staff upon marriage, except for temporary periods and under exceptional circumstances, and

"Whereas, the library commission, in its sole discretion, and without reference to any action hereto-

fore had or taken by the city council, deems it inadvisable to continue married women permanently on its staff, and

"Whereas, misunderstandings have arisen which require that such policy be properly understood and that all employees of this commission be properly advised in the premises; therefore be it

"Resolved:

"First: That women employees of the library commission who are certified as permanent employees shall upon marriage tender their resignations immediately, and

"Second: That as a prerequisite to permanent employment by the library commission, each such woman employee shall be notified of the contents of this resolution and shall accept such employment subject to the terms and conditions thereof,

"Third: That all the present women employees of the library commission be properly notified of the contents hereof and be further notified that marriage shall constitute cause for termination of employment by the commission in the event no voluntary resignation is received."

Following her discharge, plaintiff filed petition with the civil service commission protesting her removal; but the commission found that she was discharged for violating a rule of the library commission, and denied the petition. On the hearing of the mandamus proceedings, the trial court found that the library commission was limited, in discharging employees, to causes "which, in the opinion of the person with authority to * * * dismiss such employee, may interfere with the efficient discharge of his duties." The court further held that the commission had abused its discretion in discharging plaintiff solely because of her marriage.

Discretion, when vested in public officials, does not mean absolute or arbitrary power. It must be

exercised in a reasonable manner, and not maliciously, wantonly, or arbitrarily to the wrong and injury of another. It is not a private or personal discretion, but one to be exercised according to established and well-known principles of law. A rule which assumes that all persons become less competent and efficient after marriage is unreasonable, because purely arbitrary and capricious. Marriage in itself does not constitute a "good and just cause" for discharge. If a public employee is just as competent and efficient after marriage as before, a dismissal because of marriage would be capricious. See *School City of Elwood* v. *State, ex rel. Griffin*, 203 Ind. 626 (180 N. E. 471, 81 A. L. R. 1027).

In the instant case, discharge is legally permitted for causes which in the discretion of the discharging officer interfere with the efficient discharge of duty. Dismissal because the library commission "deems it inadvisable to continue married women" on its staff, without any implication of inefficiency or misconduct—unless, under this novel and rarified dispensation, marriage must be considered misconduct—is, in view of the causes provided under which employees may be dismissed, arbitrary and capricious.

On appeal for the first time is raised the question that, under section 13 of the civil service amendment to the city charter, plaintiff was properly discharged. Section 13 reads as follows:

"On and after the passage of this amendment, no married woman whose husband is physically and mentally fit and able to provide for himself and wife or family, shall be employed by the city of Dearborn, provided, however, that any married woman in the employ of the city of Dearborn at the time this amendment takes effect shall remain so employed in her respective duties and position, but,

shall not participate in, nor share in any rights or benefits, nor shall she at any time come under or be classified as a civil service employee, anything hereinbefore mentioned to the contrary notwithstanding.''

We are now called upon to determine this question and to pass upon the constitutionality of the charter. On the trial, for some reason, defendant city was most emphatic in its stand that section 13 be not considered by the court to justify the action of the city. In its opinion, the trial court stated:

''Respondents do not invoke section 13 in support of their action. In that connection, the following is quoted from respondents' brief:

'' 'Section 13 of the civil service amendment, relative to employment of married women, was not the basis for plaintiff's removal, nor was it invoked by the civil service commission in considering her appeal to it, and its validity or invalidity is not involved in the issue before this court in this cause.

'' 'The action had and taken by the library commission had no relation, whatsoever, to section 13 of the amendment. Prior to the amendment, it refused to hire or keep in its employ married women. It continued this policy in the case of plaintiff and adopted the written resolution, so that there be no misunderstanding upon plaintiff's part, especially after her appearance before it to claim her absolute right to continued employment, though married.' ''

There appears to have been an injunction from the Wayne circuit court, outstanding against defendant city, restraining, subject to certain exceptions, the discharge of employees. It does not appear from the record what the scope of this injunction was, but, in the light of the circumstances now before the court, it appears to have been inapplicable to the facts herein. Nevertheless, there was

some kind of controversy. It also appears that the attorney general had given an opinion that section 13 of the amendment did not authorize the discharge of a woman employee on the ground of marriage while in service. See, also, *Opinion of the Justices to the Governor and Council,* 166 Mass. 589 (44 N. E. 625, 34 L. R. A. 58). Whatever the reason, defendants did not want the trial court to consider and pass upon the section in question and, accordingly, the trial court did not consider it in arriving at its determination. It cannot now be considered, for the first time, in this court.

In *Chatterton* v. *Parrot,* 46 Mich. 432, 435, Mr. Justice Cooley stated with reference to the jurisdiction of this court:

"Its jurisdiction is limited to a review of such rulings of the circuit court upon questions of law as were distinctly presented and passed upon. * * * Perhaps the plaintiff supposed he would be at liberty to go back of the judgment and raise any question of law that might have been raised in the court below; but that is a mistake: we might if that were admissible be passing upon questions that were never called to the attention of the trial judge, and perhaps be reversing his judgment on points on which he would agree with us."

In *Re Reh's Estate,* 196 Mich. 210, 216, appellant attempted to insert a new argument on review, and the court observed:

"It does not appear from the findings whether the bank accounts in question were commercial or savings, but it does clearly appear that the trial court did not pass upon them, for the reason that by concessions of counsel for the respective parties the question of title to cash in bank was eliminated. * * * We, therefore, cannot treat those questions as open for consideration by this court."

With reference to the question of the constitutionality of a statute, where it is first raised on review in this court, it was said in *Wanstead* v. *Fisher,* 278 Mich. 68, 76:

"Appellants raise the question of the constitutionality of Act No. 280, Pub. Acts 1915 (3 Comp. Laws 1929, § 13512 *et seq.*), but inasmuch as this question was not raised or passed upon in the court below, we decline to pass upon it."

In *Makar* v. *Peoples Wayne County Bank of Dearborn,* 284 Mich. 489, 492, the court remarked:

"With regard to the question raised by defendant concerning the constitutionality of the moratorium statute, this question was not raised on the hearing before the lower court, nor was error assigned on this ground. It appears for the first time on appeal in the 'statement of questions involved.' This is not sufficient to present a constitutional question for review by this court."

"The issue of the constitutionality of the statute in question was neither presented to the trial court nor passed upon by it, and, therefore, will not be considered on appeal." *Jesiek* v. *Banfield,* 286 Mich. 440, 443.

"It is too well established to require the citation of authority that the case must be heard in this court upon the claim and theory upon which it was tried in the court below." *Roepcke* v. *Railroad Co.,* 100 Mich. 541, 547.

In this case, the foregoing rule applies with much more force than in the cited authorities. Here, the question was not only not presented to the trial court, but the court was distinctly told that defendants did not rely upon the provision in question and that it should not be considered by the court in its determination. This proposition cannot now be raised for the first time on review in this court.

Defendants contend that mandamus is not the proper remedy in this case, for the reason that the controversy involves the discretion of a public official and that the remedy will not lie unless the duty to perform is purely ministerial. The civil service amendment provides that an employee not guilty of the charges made against him shall be reinstated. In this case, the duty to reinstate is mandatory, and not discretionary. The dismissal having been wrongful, it is no longer a question of the discretion of an official with regard to reinstatement, but a mandatory duty, not only to reinstate the employee but to compensate her for full pay for the time of such suspension or discharge. In 43 C. J. p. 912, it is said:

"An employee within the application of such a statute may be removed or discharged only in the manner provided thereby; and where he has been discharged in violation of the statute he may sue in mandamus to compel his reinstatement and payment of his salary from the time of the illegal discharge to the time of reinstatement."

See *Wilkinson* v. *Board of Police Commissioners of City of Saginaw,* 107 Mich. 394; *Philbrick* v. *Dust,* 178 Mich. 605; *Grobbel* v. *Board of Water Commissioners of the City of Detroit,* 181 Mich. 364; *Lilienthal* v. *City of Wyandotte,* 286 Mich. 604.

In addition to the restoration of the position to the discharged employee by mandamus proceedings, it is the law in this State that the employee is entitled to recover back pay in the same proceedings, where the amount is liquidated and not in dispute. In *Lilienthal* v. *City of Wyandotte, supra,* this court, speaking through Mr. Justice POTTER, said:

"The amount plaintiff is entitled to is fixed and determined and, though mandamus will not ordinarily lie where there is another adequate remedy, *Hartz* v. *Wayne Circuit Judge,* 164 Mich. 231, or the

amount due is in dispute, here the amount due is liquidated and only awaits payment. Under such circumstances, mandamus will issue to reinstate and to pay plaintiff as indicated herein.''

The order of the trial court granting the writ of mandamus should be affirmed, with costs to plaintiff.

SHARPE, C. J., concurred in the result.

WIEST, J. This is certiorari to review mandamus in which we are limited to questions of law.

I cannot join in the opinion of Mr. Justice McALLISTER.

The civil service amendment to the city charter authorized the ''removal, dismissal, reduction or suspension of any such employee [classified service] for any cause   *   *   *   which, in the opinion of the person with authority to remove or dismiss such employee, may interfere with the efficient discharge of his duties.''

Is marriage of a female employee, under such charter provision, valid cause for her discharge? My Brother says no, and cites *School City of Elwood* v. *State, ex rel. Griffin,* 203 Ind. 626 (180 N. E. 471, 81 A. L. R. 1027). The holding in that case was expressly overruled in *McQuaid* v. *State, ex rel. Sigler,* 211 Ind. 595, 606 (6 N. E. [2d] 547, 118 A. L. R. 1079), where the court stated, after citing and reviewing cases on the subject:

''It thus appears that the great weight of authority supports the view that, where the action is taken pursuant to a policy adopted in good faith, marriage is a good and just cause for the cancellation of a tenure teacher's contract when the contract is made with specific reference to, or with full knowledge of, the rule or policy. Sound reason supports this view,

and it must be concluded that this court has been resting in error.''

In *Ansorge* v. *City of Green Bay,* 198 Wis. 320 (224 N. W. 119), the relator had knowledge of the unwritten policy not to employ married women as teachers and it was held that her marriage during her employment was cause for discharge. See, also, *State, ex rel. Schroeder,* v. *Board of School Directors,* 225 Wis. 444 (274 N. W. 301), and *Backie* v. *Cromwell Consolidated School District,* 186 Minn. 38 (242 N. W. 389).

In *Rinaldo* v. *School Committee of Revere,* 294 Mass. 167, 168, 169 (1 N. E. [2d] 37), it was stated:

"The primary question to be decided is whether, if a school committee has adopted a policy forbidding the employment of married women teachers, the marriage of a woman teacher can be found to be 'good cause' for dismissal under Gen. Laws (Ter. Ed.), chap. 71, § 42, which, in its present form as amended by Stat. 1934, chap. 123, provides that a teacher employed at discretion 'shall not be dismissed, except for inefficiency, incapacity, conduct unbecoming a teacher  *  *  *  insubordination or other good cause.'  *  *  *  We think the answer must be in the affirmative.

"'Good cause' for dismissal in a statute of this kind is by no means limited to some form of inefficiency or of misconduct on the part of the person dismissed. *Gardner* v. *City of Lowell,* 221 Mass. 150, 153 (108 N. E. 937). Such matters are amply covered by the words which precede 'good cause.' Good cause includes any ground which is put forward by the committee in good faith and which is not arbitrary, irrational, unreasonable, or irrelevant to the committee's task of building up and maintaining an efficient school system. *Ayers* v. *Hatch,* 175 Mass. 489 (56 N. E. 612). *Gaw* v. *Ashley,* 195 Mass. 173, 177 (80 N. E. 790, 122 Am. St. Rep. 229). *Dunn* v.

*Mayor of Taunton,* 200 Mass. 252, 258 (86 N. E. 313). * * *

"If the cause assigned is at least fairly debatable and is asserted honestly, and not as a subterfuge, that is enough. Whether or not married women should teach in public schools is a matter about which there may be an honest difference of opinion. We need not elaborate the possible arguments. It is enough to say that reported decisions in various jurisdictions show that many local school boards in widely scattered parts of this country and in England have taken the same attitude which the respondents here take. The committee have 'general charge' of the public schools in Revere. * * * It is for them and not for the court to determine matters of policy. We are aware that some courts have come to the opposite conclusion, but we find ourselves unable to agree with them."

It had long been the policy of the library commission of the city of Dearborn not to have married women on the municipal payroll and to that end, on December 5, 1939, passed a resolution stating that the commission "deems it inadvisable to continue married women permanently on its staff," and "that all present women employees of the library commission be properly notified of the contents hereof and be further notified that marriage shall constitute cause for termination of employment by the commission in the event no voluntary resignation is received."

Plaintiff was duly notified of such resolution and was aware of the policy so declared. December 9, 1939, plaintiff married. January 9, 1940, she was discharged and, upon hearing on her petition for reinstatement, the city civil service commission found "she has admitted the violation of a question of library policy with which we have nothing to do, inasmuch as it pertains solely to the management

and operation of the department,'' and denied re-instatement.

We hold, under the charter provision and the circumstances of the case, the marriage of relator was cause for her discharge and was not arbitrary action in abuse of discretion vested in the board and may not be interfered with or controlled by the courts.

The order granting the writ of mandamus is vacated, with costs to appellants.

BUSHNELL, BOYLES, CHANDLER, NORTH, and BUTZEL, JJ., concurred with WIEST, J.