## Commonwealth of Pennsylvania ex rel. Susan Matilda Scott, Appellant, *v.* The Board of Public Education.

*School law—Election of teachers—Board of education of the city of Phil-
adelphia—Acts of March 3, 1818, February 17, 1865, May 25, 1871, and
May 25, 1887.*

The board of public education of the city of Philadelphia has the right
to prescribe the qualifications of all teachers, and to classify or grade them
in accordance therewith, in such manner and by such tests as the board in
its discretion may deem best for the interest of the public school system
of the district; and in determining the qualifications of teachers for dif-
ferent kinds of schools, the board may take into consideration the ques-
tion of sex.

The board of education of the city of Philadelphia may determine that
male teachers only shall be principals of certain classes of schools, and
in doing so they do not violate the provision of article 10, sec. 3, of the
constitution of Penna., that " women twenty-one years of age and upwards
shall be eligible to any office of control or management under the school
laws of this state; " because the position of teacher is not an " office of
control or management " within the meaning of the constitution.

The sectional school boards in the city of Philadelphia have the right to
select from the classes of teachers established by the board of education
the individuals to fill the required positions in their several sections, and
to certify the names of the persons so selected, whether as principals or
assistant teachers, to the board of education. The board of education
then has the right to inquire whether the person so certified is a qualified
member of the class from which the particular position should be filled,
and, if so, it is charged with the duty of certifying the name and position
to the city controller. The latter duty is ministerial and imperative, but
it only arises after the board has ascertained, in pursuance of its right of
inquiry, that a proper occasion is presented for its performance.

Argued March 31, 1898. Appeal, No. 36, Jan. T., 1898, by
plaintiff, from order of C. P. No. 2, Phila. Co., Dec. T., 1895,
No. 730, overruling demurrer to return to writ of mandamus.
Before GREEN, McCOLLUM, MITCHELL, DEAN and FELL, JJ.
Affirmed.

Demurrer to return to alternative writ of mandamus.

The facts appear by the opinion of PENNYPACKER, J., which was as follows:

The respondents are the members of the board of public education. In accordance with their rules and by-laws they reorganized the grammar schools of the eighth school section, known as the Locust Street Grammar Schools, so that they became combined, as a mixed grammar school of boys and girls, with five divisions under one principal. The relator holds a certificate of qualification as principal, issued by the respondents, and for eleven years has been teaching the boys' grammar school in the said school section, as principal. On November 26, 1895, the relator was elected by the sectional board of school directors of the eighth school section, as principal of the mixed, or combined, grammar school, and her election was certified to the respondents for their approval. The respondents notified the board of directors of public schools for the eighth section that she was ineligible, whereupon a petition was filed asking for a mandamus, commanding the respondents to certify the name and grade of the petitioner as principal of the said Locust Street Mixed Grammar School to the controller of the city of Philadelphia, and to approve of her election. The return of the respondents to the writ admits the facts as above set forth and continues: "The said respondents aver that they refused to approve of her selection as principal of the mixed grammar school, or certify her name to the city controller, because in the judgment of the said respondents the position of principal of the mixed grammar school established at Twelfth and Locust streets should be filled by a male teacher." To this return the relator demurred.

In Commonwealth ex rel. Sherry v. Jenks, 154 Pa. 374, the Supreme Court, in their opinion, say: "In balancing the arguments for and against an appointment to a particular school the board of education may, and they could not intelligently dispose of the question if they did not, consider the sex and age of the pupils . . . . and in so far as the sex of the applicant might seem likely to help, or to be in the way of success in the maintenance of the discipline necessary for the good of the school, it may be considered with the other qualifications and

help to determine the choice. . . . It is a circumstance that
may be helpful with some pupils, or in schools of a particular
grade, and not helpful with other pupils or in other schools."
This is authority for the proposition that the board of education
may consider the question of sex in determining as to the fit-
ness of an applicant for the position of teacher in a particular
school. The return in effect says and the demurrer admits the
truth of its statements, that the respondents have considered
the question, and in their judgment the needs of the mixed
grammar school established at Twelfth and Locust streets, in
other words, this particular school, require that the position
should be filled by a male teacher. If the correctness of this
allegation be denied, the proper course would be to traverse the
return. Where a discretion is to be exercised, a mandamus can-
not issue. The writ ought to be granted only where the duty
is ministerial.

The demurrer is overruled.

*Error assigned* was the order of the court.

*Wm. Henry Lex* and *John G. Johnson,* for appellant.—It is the
duty of the board of controllers to provide a system of exami-
nation of all persons who may desire to become teachers in the
public schools, and it is the right of the sectional board to elect
any person so examined and qualified, and receiving a certificate
of qualification which is unimpaired, and is in no way restricted
to the selection of a person of a particular sex. The duty of the
controllers to certify the name and grade of such person to the
city controller is imperative, and in no way can the words of
section 4 of the act of February 4, 1865, be interpreted to vest
a discretion in the controllers as to the certification of a duly
qualified person elected by a sectional board : McManus v. School
Controllers, 7 Phila. 23 ; Chestnut v. City, 41 Leg. Int. 232.

The board had no power to discriminate on account of sex :
Houseman v. Com., 100 Pa. 222; Com. ex rel. Sherry v. Jenks, .
154 Pa. 368.

*James Alcorn,* assistant city solicitor, with him *John L. Kin-
sey,* city solicitor, for appellee.—The board of public education
of the first school district has the sole power to determine the
qualifications of teachers. The sectional boards must select
the persons found duly qualified under the rules and regulations

of the board of public education: City v. Johnson, 47 Pa. 382; Act of February 17, 1865, P. L. 176; Act of May 25, 1871, P. L. 1157; Chestnut v. City, 17 Phila. 32; McManus v. School Controllers, 7 Phila. 23.

The appellant claims that the following proviso to the by-law of the board of public education, "And provided further, That male teachers only shall be eligible to the principalship of a grammar school for boys, a mixed grammar school, or a consolidated school having three or more full grammar divisions, and to the position of supervising principal of a combined school containing a grammar school for boys or a mixed grammar school," is in violation of section 3, article X., of the constitution of 1874, which declares: "Women twenty-one years of age and upwards shall be eligible to any office of control or management under the school laws of this state." This provision of the constitution does not apply to the employment of a teacher in the public schools. An examination of the debates of the constitutional convention, vol. 5, page 181, shows that the offices referred to were those of school directors and school controllers.

A teacher is not an officer in the ordinary sense of the word. He has duties to perform incident to his employment, but they are not official duties, and he is not under oath: Seymour v. Over-River School District, 53 Conn. 509; Com. v. Fitler, 147 Pa. 288.

The appellant cites Houseman v. Com., 100 Pa. 222, to sustain her view that a teacher is an "officer." That was the case of a deputy collector of delinquent taxes, and it was there held that he was an officer, under the 4th section of article VI., of the constitution of 1874. The court adopted the definition of "public officer" as given in Commonwealth v. Evans, 74 Pa. 124.

The discretionary power of the board of public education in the selection of suitable and duly qualified persons as principals of mixed grammar schools will not be interfered with by the court: Kell v. Rudy, 1 Pa. Superior Ct. 507.

Opinion by Mr. Justice Mitchell, July 21, 1898:

By the Act of February 17, 1865, P. L. 176, the controllers of the public schools of Philadelphia (now called the board of public education) were directed to "establish a system for the examination of the qualifications of all persons who may desire to become teachers in the public schools of said district." And by section second, "No person shall, from and after the passage

of this act, be elected to the position of teacher, in any of the
public schools of said district, by any of the sectional boards
of school directors, within the same, unless such persons shall
have been found duly qualified for the position to which he or
she shall have been elected, nor unless he or she shall have re-
ceived a certificate of qualification, duly issued by the author-
ity of said controllers, after his or her examination provided
for in the first section of this act." The purpose of this act
was to vest the entire control of the general subject of teach-
ing and teachers for the whole district in the central and supe-
rior body, leaving to the local bodies of sectional directors the
selection of individual teachers out of the class coming within
the regulations of the board. The act of 1818 had previously
committed to the controllers the general superintendence of all
the schools, including authority to provide "such suitable
books as they shall deem necessary for the use of the pupils
belonging to the different schools within the district." In
Com. ex rel. Sherry v. Jenks, 154 Pa. 368, it was said that
under these acts "the regulation of the grade of schools and
the transfer of a school from one grade to another is within
the powers and it is among the duties of the board." In like
manner the grading or classification of teachers is as much
within the powers and duties of the board as the grading of
schools. The public school system of this district includes a
Central High School for boys, a Normal School and a High
School for girls, and from these downward through the more
elementary grades of education to the kindergartens. The
system therefore requires teachers of very various qualifications,
including acquirements, capacity to impart knowledge as well
as to acquire it, age, experience, ability to maintain order and
discipline, etc., and the classification and assignment of teach-
ers by such qualifications to the various grades of schools is
entirely within the province of the board of education. This
was clearly settled in Com. ex rel. Sherry v. Jenks, 154 Pa.
368, supra.

The gradation of teachers into principals and subordinates is
of long standing, and is recognized in our acts of assembly.
In fact, an executive head by whatever name called is neces-
sary to the harmonious and effective conduct of any school
having several classes under different teachers. But the qual-

ifications of principals themselves, considered in relation to the
various schools over which they may be called to preside, may
and practically do vary so widely as to require classification,
and this is also a matter within the discretion and control of
the board of education.

It appears by the pleadings that the board has in fact classi-
fied principals to a certain extent and for certain purposes by
the following proviso to section 8 of by-law XXI., "And pro-
vided further, that male teachers only shall be eligible to the
principalship of a grammar school for boys, a mixed grammar
school or a consolidated school having three or more full gram-
mar divisions, and to the position of supervising principal of a
combined school containing a grammar school for boys or a
mixed grammar school." The relator holding a general certifi-
cate of qualification as a principal was elected by the sectional
board as principal of the mixed or combined grammar schools
of the eighth section, and now claims that her election is not
subject to any confirmation by the board of education whose
duty to certify her name to the city controller is ministerial
and imperative. For this position reliance is placed upon the
Act of May 25, 1871, P. L. 1157, providing that "the sectional
boards of school directors in the first school district are hereby
authorized and empowered to elect the principal or principals
of the grammar school or schools in their respective school sec-
tions, and the said person or persons so elected shall be entitled
to act without further confirmation." But it is entirely clear
that this act must be read in connection with the prior acts on
the same subject, and was not intended to take away or dimin-
ish the powers of the board of education to prescribe the quali-
fications of all teachers, and in so doing to grade them into
principals and others, and to classify each grade as among them-
selves according to knowledge, age, experience or other test as
the board may deem proper. The act of 1871 consists of the
single section above quoted, and is merely declaratory of the
law as it existed before. The act of 1865, already quoted,
authorized the board of education to prescribe the qualifica-
tions of "all persons who may desire to become teachers," and
in the proviso to the second section declared that "the exclu-
sive right of the several sectional boards of school directors within
said district to elect the teachers of their respective sections

shall be and remain unimpaired, except in so far as the same is qualified by this act." The use of the single word " teachers " in this proviso was thought to raise a doubt as to the power of the sectional boards to elect principals, who might be claimed under the subsequent phrase, " except in so far as the same is qualified by this act," to be subject to a discretionary confirmation by the controllers. The act of 1871 quieted this doubt. No other intent can be perceived in it, and it has no other effect on the previous law. This view is confirmed by the Act of May 25, 1887, P. L. 364, on the same subject, where in providing for the certification of names by the sectional boards to the board of education care is taken to include expressly " all persons, qualified as aforesaid, who shall hereafter be elected to the position of principal or assistant teachers," etc.

The rights of the respective boards are well defined and in nowise doubtful. It is the right of the board of education to prescribe the qualifications of all teachers and to classify or grade them in accordance therewith, in such manner and by such tests as the board in its discretion may deem best for the interests of the public school system of the district. It is the right of the sectional boards to select from the classes thus established the individuals to fill the required positions in their several sections. They are directed to certify the names of the persons so selected, whether as principals or assistant teachers, to the board of education. The board of education then has the right to inquire whether the person so certified is a qualified member of the class from which the particular position should be filled, and if so, it is charged with the duty of certifying the name and position to the city controller. The latter duty is ministerial and imperative, but it only arises after the board has ascertained in pursuance of its right of inquiry that a proper occasion is presented for its performance.

So far, in dealing with the subject of qualifications of teachers, I have omitted mention of sex, as that is a matter of present controversy. But it is manifest that, apart from the legal point involved, sex is a most important element to be considered in the selection of teachers. The system as already said includes schools of all grades, from high school to kindergarten, and the curriculum embraces instruction in sewing, cooking and in mechanical or manual occupations. To set men over kinder-

gartens of children from four to six years of age, or to teaching small girls to sew or larger ones to cook, would in the present state of the world's social organization seem incongruous, although there are men cooks and men tailors. So on the other hand women in charge of a night school of mechanics, or a school of half grown and intractable youths, could hardly be expected to have a successful administration. Unless therefore some positive mandate of law prevents, it would seem that the question of sex in relation to the qualifications of teachers for different kinds of schools was one peculiarly within the discretionary control of the board of education.

It is claimed by the relator that such mandate is found in the provision of art. 10, sec. 3 of the constitution that "women twenty-one years of age and upwards shall be eligible to any office of control or management under the school laws of this state." It may well be questioned whether teachers are officers of a school in any but a very restricted sense as contrasted with pupils or scholars. But even conceding them to be officers in some vague popular sense, they are officers of instruction, and not of "control and management." The meaning of these words was well known at the time of the adoption of the constitution. They referred to the public officers recognized by the statutes of the state as entrusted with the general administration of the public school system—the state superintendent of public instruction and local school directors and controllers, empowered to lay school taxes, build schoolhouses, establish schools, appoint teachers, regulate the admission of pupils, the course of study, etc. These were officers of control and management. To these offices women were not eligible. It is part of the current history of the times, that the sentiment for the participation of women in the affairs of government had its initiative point, both in England and in this country, in connection with the education of the young for which they had certain very manifest natural capacities. It was the force of this sentiment that inserted the provision in question in the constitution of 1874. Teachers were not intended to be included, for there was no occasion to think of them in that connection. It is said in the appellee's argument that nearly ninety-seven per cent (3016 out of a total of 3117) of the teachers in the public schools of Philadelphia at the present time are women, and the

proportion at the time of the adoption of the constitution was not materially different. The school laws of the state put women under no disability as teachers that required removal, and it was not with any reference to such positions that the constitutional provision was adopted.

It appears then that the board of education has classified principals with reference to certain classes of schools to which they may be appointed; that the relator, though holding a general certificate of qualification as a principal, is not within the class entitled to appointment to the particular school to which she was elected, and that the test of sex established with reference to such schools is not unlawful, but is within the discretion of the board. Judgment therefore was properly entered for the defendant. .

Judgment affirmed.