STATE EX REL. SCHROEDER, Respondent, vs. BOARD OF SCHOOL DIRECTORS OF CITY OF MILWAUKEE and others, Appellants.

*May 26—September 14, 1937.*

For the appellants there were briefs by *Walter J. Mattison,* city attorney, and *Omar T. McMahon* and *Mathias Schimenz,* assistant city attorneys, and oral argument by *Mr. McMahon* and *Mr. Schimenz.*

. For the respondent there were briefs by *Hannan, Johnson & Goldschmidt,* and oral argument by *Martin R. Paulsen* and *William F. Hannan.*

The following opinion was filed June 21, 1937:

FAIRCHILD, J.   The claimed rights of the petitioner depend upon whether she was, as found by the trial court, legally elected or appointed a probationary teacher September 9, 1931.   There appear to be three designations applied to teachers engaged in the public schools of Milwaukee, as indicating a particular status surrounded by limitations either upon the teacher or the school board.

The rights of tenure of the teacher in one classification are to some extent distinguished from such rights of one in the other classifications.   The substitute teacher, the probationary teacher, and the permanent teacher have place in the pattern, and an individual who by hire or contract becomes one or the other is to be treated accordingly.

The board has been intrusted with the management of the schools of the city.   It is to select the members of the regular teaching force.   The regulations, outlined by the legislation under which the board is to conduct affairs intrusted to it, leave to the board discretion in the matter of the electing and appointing of teachers.   The process of a . tryout or a probationary period before a permanent tenure is secured by a teacher is a provision established in the law in connection with the permanent-tenure plan.   This provision

has resulted from a consideration of experiences in organizing and conducting schools and the advantages gained by the security and permanency in position of a teacher, and is an incident to the greater process of providing a capable teaching force so necessary in any school system. The permanency of tenure is not to be secured at a disadvantage to the school or by placing undue burdens upon the taxpayers. The steps to be taken and the manifestation of satisfaction with teachers by the board are matters fixed by the statute. The board has the duty of devising methods by which it can discharge the obligations placed upon it. In keeping the schools 'open occasions must necessarily arise when a substitute must be employed. Such occasions began to arise early in the history of the school system in Milwaukee, and their recurrence was so frequent that a practice has obtained there for years of arranging for supply teachers and having substitute teachers who will be ready to respond to a call for their services. They are ordinarily hired and placed by the superintendent of schools. The exigencies of the situation resulting from the absence of a teacher dictate to some extent the number and qualifications of such substitute teachers, and the qualifications required of probationary teachers or permanent-tenure teachers are not necessarily insisted upon in substitute teachers.

A standard of training and educational achievement is fixed and insisted upon for the teachers employed otherwise than as substitutes. That this standard may be above the qualifications required generally by the state does not give any applicant a right to insist upon being employed because he has met the minimum standard.

The care to be taken in the selection of teachers other than substitute teachers is considered and provided for in sec. 9, ch. 459, Laws of 1907, which provides:

" . . . A committee, consisting of the president of the board and four members of the board selected by the presi-

dent, shall on a strict basis of eligibility and fitness, examine, certificate, employ, classify, transfer and promote teachers. The action of such committee shall be subject to amendment, rejection or confirmation by the board. . . ."

By virtue of this chapter, the public schools in Milwaukee are under the general management, control, and supervision of the board. This board may make and modify rules and regulations for the organization, discipline, and management of the public schools under its control. It may generally adopt such measures as will promote the "good order and public usefulness of said schools." Rules consistent with the purpose and plan of the statutes were adopted by the board relating to teachers' elections and appointments. They provided that the employment, classification, transfer, and promotion of the teachers shall be by committee upon the recommendation of the superintendent, subject to approval by the board. The number of teachers so appointed are not to be in excess of the number of teaching positions allowed by the rule of apportionment.

The circumstances of petitioner's employment supply the basis for defendants' act in retiring her without according her the hearing provided for for teachers who have reached the status of permanent tenure. She had not reached a position of that degree. The findings of fact to the contrary are against the great weight and clear preponderance of the evidence, and the conclusions of law drawn therefrom by the learned trial court are not sustained. The material and controlling facts show an engagement on her part to act for a time as a substitute teacher, the duration of that period to be fixed by the time required for her completion of a contemplated course of study and the acquisition of a degree. On March 29, 1931, petitioner, then unmarried, applied for a teaching position. While she had a state license to teach, she did not have the amount of study subsequent to her high-school graduation which the board had determined to

require. Her qualifications matched the state-law requirements to teach, but did not meet the accepted standards of the board. This state of affairs was thoroughly understood by her. She was told in a letter from the superintendent:

"You are doubtless aware that your preparation is not quite adequate, but there could be no objection to your serving on a substitute basis until you have completed the required work."

What has been said with relation to the qualifications required of teachers, their choice, and promotion by the board is not affected by the employment by the superintendent of a teacher as a substitute even though, as in this case, she be assigned to duty and continue to serve from day to day during three years.

In June, 1931, she had a personal interview with the superintendent and the principal of the Paul Binner school, and on June 26, 1931, she received the following letter:

"Following office conferences, Superintendent Potter asks me to assign you to work here in September on a substitute basis until ratings of your work by the principal and supervisory officers concerned may sustain your nomination. . . ."

From September 8th and during the following three years she remained on the records as a substitute teacher. At the time of her engagement as a substitute teacher the declared policy as to employment of regular probationary or permanent-tenure teachers was that the minimum requirements for appointment or election were satisfactory teaching experience and the possession of a degree representing four years of work after high-school graduation, a Wisconsin unlimited license, and a health certificate. The petitioner appears to have entered into the arrangement outlined by the superintendent, and the utmost frankness and good faith were manifested by those who dealt with her. The superintendent without any committee or board action assigned her as sub-

stitute teacher; she accepted, and having in the three years that followed, and about February 1, 1934, completed her course and secured her degree, the superintendent later submitted her appointment as a teacher on a three-year probation basis and recommended her appointment to the committee on appointments. The committee recommended the appointment to the board, and the board at its meeting October 2, 1934, elected the petitioner for her first semester of probation teaching, effective as of September 5, 1934. This definitely determines her status at the time of her discharge as a probationary teacher, having been such only since September 5, 1934. Within her probationary period and before she had progressed to or earned the status of permanent-tenure teacher, on January 7, 1935, the committee on appointments and the board rejected the superintendent's nomination of her and refused to re-elect and reappoint her into the second semester of her probation service. That action by the committee, sustained by the board, was for the reason, if one were necessary, found in a policy of the board. It is conceded that assignment of cause and a hearing would be essential to a valid discharge of petitioner if she had attained permanent tenure; not having attained it, she cannot complain of a discharge arising from a policy. Petitioner had assumed new obligations by her marriage, and those obligations carried with them a likelihood of termination of service or interruption of it from time to time. The board members were of the opinion that it was wiser for the time being to prefer single women as probationary teachers to married ones or those about to be married. The policy of the board was evidently based on calculations arising out of the times and circumstances and the experience of the school management. The evidence shows that when petitioner began to teach in September, 1931, two hundred eighty-five teachers were married, two hundred fifty-seven of whom were on permanent tenure, seventeen on probation, and eleven substitutes.

On January 1, 1935, there were four hundred eight married women, three hundred eighty-six on permanent tenure, four on probation, and eighteen substitutes. In September, 1931, eight of the married women were absent because of marriage or maternity, and on June 1, 1935, thirty-four were absent for the same reason. A summary of the testimony upon the subject of policy is that two thousand single women were applicants and on the substitute or reserved list. The petitioner's husband was employed. It is difficult in a large school system to have a large number of married women, and the number was increasing.

In the case of *Ansorge v. Green Bay,* 198 Wis. 320, 325, 224 N. W. 119, the board of education took the same position, or seemed to have been influenced by the same policy which obtained in the case of the board now before us, and the right to hire teachers and to dismiss them was discussed. It is there held that the school board is clothed with broad power and discretion and it was said:

"It may be conceded that a married teacher can ordinarily perform her duties as satisfactorily as an unmarried one, but the board is charged with a duty which requires it to promote the public interests. On a policy such as is manifested in the instant case there may be a wide difference of opinion. Many circumstances may exist with reference to a particular school which might lead to the belief that a male teacher would be more suitable for employment than a female teacher. On the other hand, the same may be said with respect to married and unmarried teachers. In the employment of teachers the board must be and ordinarily is vested, as is heretofore said, with a wide discretion, and when such discretion is exercised in good faith and is not contrary to law, the exercise of such discretion should not be interfered with or controlled by the courts."

See also *Kuebler v. Two Rivers,* 216 Wis. 428, 257 N. W. 591; *Rinaldo v. Dreyer* (Mass.), 1 N. E. (2d) 37; *Commonwealth ex rel. Scott v. Board of Public Education,* 187 Pa. 70, 40 Atl. 806; 24 R. C. L. pp. 612, 618.

Petitioner in a letter November 19, 1934, advising the superintendent of her approaching marriage, said: "I do hope that my continuing to teach for a short time will meet with your approval." In her testimony at the trial she did not recall just what she meant by the use of those words, but regardless of whether the school authorities then concluded she did not expect to become a permanent member of the teaching staff, the board had the authority to terminate her employment. She was not then in a position to demand a different classification than had been accorded to her by the school board. The contention that her three years of teaching under circumstances which all assumed was as a substitute teacher, and in the absence of any election or appointment by the board, constituted in fact the period of probation cannot be sustained because petitioner's name was never before the school board for consideration until its meeting on October 2, 1934. Sec. 42.55 (18), Stats., provides:

"All elections or appointments of teachers in such cities shall be on probation, and after successful probation for three years, the election or appointment shall be permanent. . . ."

The board's powers with relation to the selection and appointment of teachers are defined. The board must meet and consider at a meeting the nomination of a candidate for a probationary appointment and the recommendation of the statutory committee before a contract is made placing such teacher on a probationary basis. Substantial compliance with these provisions is a condition precedent, and the petitioner has failed to support her claim by any evidence showing an employment as a probationary teacher prior to September 5, 1934. In this respect the case is distinguishable from *State ex rel. Nyberg v. School Directors,* 190 Wis. 570, 209 N. W. 683. In that case petitioner began her services as a high-school teacher September 6, 1921, and for seven successive semesters was recommended for and continued on probation. It was there held that by reason of her continuance through

the probationary period, under the circumstances of that case, she was entitled to her status of permanent tenure. We said there that we were not concerned with the respective rights of a teacher and the school board during the probation period.

The cases cited to our attention by the petitioner have been carefully considered, and we are of the opinion that no well-reasoned case exists to affect our judgment here. The power of appointment requires the exercise of judgment. Since the power is consigned to the board, it must exercise its judgment, and the petitioner cannot rely upon the action of the superintendent in favoring her with a position as a substitute teacher as a basis of service in the classification of a probationary teacher. *Taggert v. School District No. 1,* 96 Or. 422, 188 Pac. 908, 1119; *Harris v. Joint School District,* 202 Wis. 519, 233 N. W. 97; *State ex rel. Mayer v. Schuffenhauer,* 213 Wis. 29, 250 N. W. 767; *Coleman v. District of Columbia,* 51 App. D. C. 352, 279 Fed. 990.

We are of the opinion that the statutes and the rules of the board of school directors preclude the petitioner from any right of recovery under the facts of this case.

*By the Court.*—Judgment reversed, and cause remanded with directions to deny the peremptory writ and dismiss the petition.

A motion for a rehearing was denied, with $25 costs, on September 14, 1937.