STATE EX REL. SCHMIDTKUNZ, Respondent, vs. WEBB and others, Appellants.

*January 11—February 7, 1939.*

*Norman B. Silver* and *John L. Newman,* both of Milwaukee, for the appellants.

*John A. Dorney* of Milwaukee, for the respondent.

NELSON, J.   In September, 1931, the plaintiff was employed as a teacher by the board of Carleton school, district No. 3, of the town of Granville, Milwaukee county.   From that time until the end of the school year in June, 1938, she was continuously employed by the board as a teacher in said school.   At or near the end of each of said school years,

including June, 1937, a contract for the succeeding year was entered into. Each of the contracts contained the following clause:

"Marriage during the term of this contract shall render same null and void."

Shortly after the last contract was entered into on June 1, 1937, she told Mr. Webb, the clerk of the school board, that she would like to be married and would like to keep on teaching for the year possibly "so that we could get that little start uphill which so many new married couples need." Mr. Webb asked her how long she would teach and she stated that she intended to teach only to the end of the year. At the opening of the school year in the fall of 1937 she was permitted to teach. In October she called Mr. Webb over the telephone and asked him if the board had changed its mind respecting her marriage because of the enactment in August, 1937, of the teachers' tenure act. She asked him if it was permissible for her to marry, and his answer was "Yes." The plaintiff's marriage occurred on November 25, 1937. The plaintiff's husband lost his position on January 15, 1938. On March 18, 1938, the plaintiff told Mr. Webb of that fact and that she would have to teach for another year. Mr. Webb spoke of the provision of her contract and said that he did not think she could. On May 10, 1938, the plaintiff received a notice from the board informing her that it had decided not to rehire married teachers. The notice is as follows:

"At a special meeting of the school board of the Carleton school, district No. 3, of the town of Granville, held on May 9, 1938, it was decided not to rehire married teachers all in accordance with the marriage clause written into our contracts with you for the past several years."

After receiving that notice, the plaintiff went to Mr. Webb and explained to him that she needed the position since her

husband was still unemployed, and stated to him that she felt that under the tenure law she had the right to be employed. A meeting of the board was thereafter held on May 26, 1938, at which the plaintiff was given an informal hearing. On the following day she was told that she would not be rehired. Thereafter the plaintiff caused a notice to be served on the board in which a formal hearing was demanded. Such hearing was held on June 21, 1938. On the following day Mr. Webb wrote a letter to the plaintiff in which he advised her that the board, after considering the matters presented at the hearing, had decided to postpone its decision on the matter of her application for re-employment until July 25th, at which time she would receive the board's final word. The letter concluded:

"Pursuant to the agreement reached verbally, at this meeting, it is understood that neither party to this controversy of your rehiring, waives any rights under the Teacher's Tenure Law, ch. 374, Laws of 1937, sec. 39.40, Wisconsin Statutes, 1937, by reason of such postponement, or waives any other rights either party may have."

On or about July 25, 1938, the plaintiff's attorney notified her that he had been informed by the attorney for the board that she would not be rehired. Shortly thereafter the action was commenced. The plaintiff told Mr. Webb in October, 1937, that she expected to teach only until the end of the school year, and admitted to the board on June 21, 1938, that she had intended to teach only until that time. Mr. Webb testified that the board's consent to her marriage and to her continuing to teach for the remainder of the school year was conditioned on her not seeking re-employment.

The trial court found, among other facts, that the plaintiff holds a state teacher's certificate entitling her to teach in the public schools of this state; that she had taught in the Granville school continuously from August 31, 1931, to June 24, 1938; that she was refused a contract of employment as a

teacher in said school because of her marriage, and that no written charges were preferred against her other than the statement contained in the notice to her, that she would not be rehired because of her marriage. The court concluded that the plaintiff had acquired a permanent employment status by virtue of the provisions of sec. 39.40, Stats., that she was refused employment without cause; that she was lawfully entitled to reinstatement as a teacher in said school commencing on or about September 6, 1938, and subsequent terms upon the conditions and terms of sec. 39.40, and was entitled to a peremptory writ of *mandamus* as prayed.

The board assigns numerous errors which need not be recited since they relate principally to the two vital questions which require decision. Those questions will be stated later.

Ch. 374, Laws of 1937, which enacted sec. 39.40, Stats., was entitled:

"An act to create section 39.40 of the statutes, relating to security in employment for teachers in certain schools."

Sec. 39.40 (1), Stats., defines the term "teacher" as used in the act and specifies the "school boards," etc., to which it is applicable. Sec. 39.40 (2) and (3), provides:

"(2) *All employment of teachers as defined in subsection (1) of this section shall be on probation, and after continuous and successful probation for five years in the same school system or school, either before or after the taking effect of this section, such employment shall be permanent during efficiency and good behavior and until discharge for cause.* A teacher who has acquired permanent employment by reason of five or more years of continuous service as herein provided, upon accepting employment in another school system or school to which this section applies, shall be on probation therein for two years and after continuous and successful probation for such two years in such school system or school, such employment therein shall be permanent during efficiency and good behavior and until discharge for cause.

"(3) No teacher who has become permanently employed, as herein provided, shall be refused employment, dismissed,

removed, or discharged, except for cause, upon written charges preferred by the managing body or other proper officer of the school system or school in which such teacher is employed. Such charges shall, after ten days' written notice thereof to such teacher, and within thirty days of receipt of such notice, upon such teacher's written request, be heard and determined by the managing body of the school system or school in which such teacher is employed and hearings shall be public in all cases when requested by such teacher. The action and decision of such managing body in any such matter shall be final."

(1) At the end of the school year in June, 1938, had the plaintiff acquired a permanent teacher employment status which would continue "during efficiency and good behavior and until discharge for cause" by virtue of the provisions of sec. 39.40, Stats. ?

It appears without dispute, that the plaintiff, prior to her employment in 1931, was the holder of a state teacher's certificate which entitled her to teach in the public schools of this state, and that she continued to teach in the Carleton school until June, 1938, a period of seven years, without any complaint having been made against her except that of her marriage. By being qualified to teach and continuously teaching in the same school for seven years she acquired a permanent employment status by virtue of the provisions of sec. 39.40, Stats., unless her contract for the school year 1937–1938, and her subsequent marriage and acts in some way prevented her from acquiring such status.

It is contended by the board that since the contract with the plaintiff for the school year 1937–1938, entered into on June 1, 1937, contained a *contra*-marriage clause, and since ch. 374, Laws of 1937, did not become effective until August 1, 1937, it should be held that that act, in so far as it is sought to apply it to the contract here, constitutes an impairment thereof and is unconstitutional. It is, of course, true that the legislature may not impair the obligation of a

contract. Sec. 10, art. I, of the constitution of the United States, and sec. 12, art. I, of the constitution of this state. But it does not appear that the board's right to discharge the plaintiff immediately upon her marriage, as provided by the contract, was in any manner impaired. Prior to the enactment of ch. 374, Laws of 1937, it was within the sound discretion of the board to adopt a policy against employing married teachers or re-employing teachers who had married. *Ansorge v. Green Bay,* 198 Wis. 320, 224 N. W. 119. The board, however, did not discharge the plaintiff upon her marriage or treat the contract as having become null and void. Had the board discharged the plaintiff at that time pursuant to the plain provisions of the contract, we should have a very different question before us. The board disregarded any right that it had to discharge the plaintiff and permitted her to teach for the remainder of the year. At the end of that year she had taught continuously in the same school for seven years. Her marriage obviously did not interrupt the continuity of her period of probation. There is nothing in the record to indicate that her seven years of teaching, considered as a period of probation, was not successful or that her teaching subsequent to her marriage was not efficient. It is in our opinion, clear that at the conclusion of the school year in June, 1938, sec. 39.40, Stats., became effective as to her and that under its plain language she had acquired a permanent employment status.

(2) Was the board justified in refusing the plaintiff further employment as a teacher solely because of her marriage?

It is conceded that the marriage of a woman teacher in and of itself does not necessarily operate to make her less efficient or in any manner violate the requirement of good behavior. But the board contends that notwithstanding the provisions of sec. 39.40 (2), Stats., which provides that

"such employment shall be permanent during efficiency and good behavior and until discharge for cause," it was proper for it in its discretion and sound judgment to adopt and maintain a policy against employing or continuing in employment married women teachers. Long prior to the enactment of sec. 39.40, it was held in *Ansorge v. Green Bay, supra* (p. 325):

"In the selection of teachers a board like the one herein of necessity must be and ordinarily is clothed with a broad power of discretion. It may be conceded that a married teacher can ordinarily perform her duties as satisfactorily as an unmarried one, but the board is charged with a duty which requires it to promote the public interests. On a policy such as is manifested in the instant case there may be a wide difference of opinion. Many circumstances may exist with reference to a particular school which might lead to the belief that a male teacher would be more suitable for employment than a female teacher. On the other hand, the same may be said with respect to married and unmarried teachers. In the employment of teachers the board must be and ordinarily is vested, as is heretofore said, with a wide discretion, and when such discretion is exercised in good faith and is not contrary to law, the exercise of such discretion should not be interfered with or controlled by the courts."

However, in that case, no teachers' tenure act or statute limiting or restricting the right of a school board to discharge teachers was involved. It is clear that that decision is not controlling here. In *State ex rel. Thompson v. School Directors*, 179 Wis. 284–286, 191 N. W. 746, a rule of the school directors was considered. That rule provided:

"Married women teachers shall not be transferred, promoted or permanently appointed to regular teaching positions except in clearly attested cases where the teacher becomes the sole support of a family by reason of the death or incapacity of the husband and that married teacher shall be known by her married name on all school records and printed matter."

Article XVII of the by-laws provided:

"The committee on complaints shall hear all charges against teachers and janitors and shall, subject to the approval of the board, dismiss teachers and janitors by majority vote for misconduct, incompetency, inefficiency, or inattention to duty."

That case involved a woman teacher who married but failed to inform the board of that fact and continued for a number of months to be known on the school records by her maiden name. This court held, assuming the rule which required a married teacher to be known by her married name on all school records and printed matter to be a valid regulation, but not determining its validity, that the school board did not have sufficient grounds to justify it in dismissing and discharging the teacher.

In *State ex rel. Schroeder v. Board School Directors,* 225 Wis. 444, 274 N. W. 301, this court held that sec. 42.55, Stats., which is applicable to cities of the first class and which provided in sub. (18) that "after successful probation for three years, the election or appointment shall be permanent, during efficiency or good behavior," and that "no teacher who has become permanently employed as herein provided by reason of three years or more of continuous service, shall be discharged, except for cause upon written charges," etc., was not applicable to substitute teachers even though they had been so employed for more than three years.

The present case is one of first impression under the teachers' tenure act adopted in 1937. The clear purpose of sec. 39.40, Stats., is to give to teachers security in employment, and to that end, after the statutory period of successful probation has run, they are given a permanent employment status during efficiency and good behavior. It is not denied that the legislature has the power to declare and limit

the authority of school boards in the matter of terminating or destroying permanent teacher tenure when once acquired. The public policy declared in such enactments is within the legislative field. *State ex rel. Karnes v. Board of Regents,* 222 Wis. 542, 269 N. W. 284.

We now come to the construction of the statute for the purpose of ascertaining what the legislature intended by the following language:

"All employment of teachers as defined in subsection (1) of this section shall be on probation, and after continuous and successful probation for five years in the same school system or school, either before or after the taking effect of this section, such employment shall be permanent during efficiency and good behavior and until discharge for cause," and "no teacher who has become permanently employed, as herein provided, shall be refused employment, dismissed, removed, or discharged, except for cause. . . ." (Sec. 39.40 (2), (3), Stats. 1937.)

The board contends that the language of the statute is broad enough to include a cause for discharge other than those relating to the efficiency and good behavior of a teacher, and that the marriage of a woman teacher should be considered as a cause for discharge or reason for refusing further employment when the declared policy of the board is not to employ a married woman teacher. In our opinion, the contention is without merit. It is our opinion that the legislature intended that teachers who had acquired a permanent status should be continued in employment during efficiency and good behavior, and that the language "and until discharge for cause" was not intended to confer upon school boards the right to discharge teachers for reasons other than those connected or associated with efficiency or good behavior. The language "during efficiency and good behavior" is not new. That language has been in sec. 42.55, which relates to the teacher's retirement fund in cities of the

first class, for many years. That language is also found in the tenure law applicable to state teachers' colleges, sec. 37.31, Stats. Neither sec. 37.31 nor sec. 42.55, Stats., contains the language "and until discharge for cause." In our view that language adds no additional cause for discharge and that phrase, under the doctrine of *ejusdem generis,* must be construed as embracing only such a cause as is of like kind and class with those designated by the specific words: "efficiency and good behavior." See *School District of Wildwood v. State Board of Education,* 116 N. J. Law, 572, 185 Atl. 664.

A number of courts have held under teachers' tenure and other statutes relating to the employment and discharge of teachers, that marriage in itself is not a ground for dismissal because it is impossible to know in advance whether the efficiency of a teacher will become impaired as a result of marriage. See *Dutart v. Woodward,* 99 Cal. App. 736, 279 Pac. 493; *Oxman v. Independent School District,* 178 Minn. 422, 227 N. W. 351; *School District of Wildwood v. State Board of Education, supra.; People ex rel. Murphy v. Maxwell,* 177 N. Y. 494, 69 N. E. 1092; *Richards v. District School Board,* 78 Or. 621, 153 Pac. 482; *Jameson v. Board of Education,* 74 W. Va. 389, 81 S. E. 1126, and annotations in 81 A. L. R. 1033, and 110 A. L. R. 804. In two states it has been held, under statutes somewhat different from ours, that marriage of a woman teacher was a good cause for discharge. See *Rinaldo v. Dreyer* (Mass.), 1 N. E. (2d) 37. The statute there construed provided that a teacher employed at discretion " 'shall not be dismissed, except for inefficiency, incapacity, conduct unbecoming a teacher . . . insubordination *or other good cause.' "* The court held that "good cause includes any ground which is put forward by the committee in good faith and which is not arbitrary, irrational, unreasonable, or irrelevant to the com-

mittee's task of building up and maintaining an efficient school system."

In *McQuaid v. State ex rel. Sigler*, 211 Ind. 595, 599, 6 N. E. (2d) 547, it was held, in construing a statute which provided that "cancellation of an indefinite contract of a permanent teacher may be made for incompetency, insubordination, . . . neglect of duty, immorality, justifiable decrease in the number of teaching positions *or other good and just cause,* but may not be made for political or personal reasons" that the words, "other good and just cause" could not be ignored and were sufficiently broad to permit a school board to dismiss a teacher who had married. The conclusion reached in those two cases under the wording of the statutes there construed is not permissible under our statute.

If there be any doubt as to the meaning of the language of sec. 39.40, Stats., or as to the intention of the legislature expressed therein, that doubt is dispelled by consulting the legislative history of ch. 374, Laws of 1937, which enacted it. Ch. 374 was originally introduced in the senate by the committee on education and public welfare by request of the Wisconsin Education Association and was known thereafter as Bill No. 43, S. It was passed by the senate as introduced, except that the period of probation was increased from three to five years. When it reached the assembly the following amendment to the bill (No. 5, A), was offered:

"This act shall not affect any married teacher, the husband or wife of whom is adequately and gainfully employed, and earning not less than $2,000 per year."

That amendment was adopted by the assembly by a vote of 46 to 25. Reconsideration of the amendment was refused by a vote of 46 to 36. Upon the return of the amended bill to the senate, Amendment No. 5, A., was refused concurrence by a vote of 19 to 13. The bill was then returned to

the assembly. The assembly thereupon receded from its position on amendment No. 5, A., by a vote of 69 to 20. It thus appears that the legislature considered the public policy of excepting from the act a married teacher whose husband was adequately and gainfully employed and earning not less than $2,000 a year. Under the circumstances, it cannot be said that the legislature intended that school boards, in their discretion, should have the right to discharge women teachers, or refuse to re-employ them simply and solely because of their marriage. Had the legislature had any such intention it would have adopted the amendment or one of similar character. We conclude, therefore, that under the language of sec. 39.40, Stats., a woman teacher having a permanent tenure may not be discharged except for inefficiency or misbehavior, and that marriage is not a cause for discharge under the present tenure act.

If the legislature, in its wisdom, desires to authorize school boards to determine whether the best interests of the schools committed to their administration require the adoption of a policy against re-employing teachers who have married, it can so declare by appropriately amending the present law.

*By the Court.*—Judgment affirmed.