STATE ex rel. HALVORSON, Appellant, vs. ANDERSON and others, Respondents.   [Three cases.]

*April 12—May 7, 1940.*

For the appellants there were briefs by *Frawley & Frawley* of Eau Claire, and oral argument by *William E. Frawley.*

For the respondents there was a brief by *Stafford & Stafford,* attorneys, and *John Frampton* of counsel, all of Chippewa Falls, and oral argument by *Harold E. Stafford.*

ROSENBERRY, C. J.   The court found that each of the relators is a duly licensed public school teacher, and prior to May 1, 1938, had continuously and successfully taught in said school for more than five years; that at the annual meeting of the school district in July, 1935, a resolution was duly passed requesting the school board not to employ married women as teachers.   Similar resolutions were passed at other meetings.   The school board, however, disregarded this resolution and continued to employ married women.   In February, 1937, the school board passed a resolution to the effect that in the future married women would not be employed as teachers in the schools.   Each of the relators went to see the school board with the request that she be employed as teacher for one more year.   As a result of this solicitation a written contract was entered into on May 3, 1937, between

the school board and each of the relators, employing her as a teacher for the term of nine months, commencing on August 30, 1937; that such contract was in the usual form but the following express agreement was included:

"It being understood and agreed that twenty days teaching shall constitute a month, and that at the end of the above-mentioned school year, no married woman teacher will be employed. This applies to [each of the relators] also when contract expires."

The relators taught school during the school year commencing August 30, 1937, and ending in May, 1938. The trial court found that this agreement was knowingly made by the teachers upon a sufficient consideration and was an important part of the contract and had not this provision been made in said contract, the relators would not have been employed during said school year; that by the terms thereof the petitioner agreed that her services in said school would end at the close of the school year in May, 1938, and that she would not thereafter seek re-employment. On April 11, 1938, each of the relators served notice upon the defendant as follows:

"Under the statutes of Wisconsin for 1938 I am a permanent-tenure teacher. I shall be ready and willing to resume my teaching duties when school opens next fall."

After receiving such notice the defendant school board notified each of the relators that she would not be re-employed because of inefficiency. Thereupon each of the relators demanded a hearing before the school board and such hearing was held. Voluminous evidence was received, and at the conclusion thereof, the board found, among other things, that each of the relators was inefficient.

The trial court further found that the defendant school board did not at any time waive or change the provisions of the written contract of employment entered into on May 3, 1937, and at all times claimed and insisted that by reason of

such provision, the several relators were not entitled to re-employment and did nothing inconsistent with such position.

As conclusions of law the trial court found that the several relators did not become permanently employed as provided in sec. 39.40, Stats., and did not acquire permanent tenure as therein provided for.

That the defendant school board was justified in refusing re-employment to the several relators and that the several relators had no right to demand re-employment after entering into the contract of May 3, 1937.

That in September, 1938, there was no clear legal duty on the part of the defendant school board to employ the several relators as teachers and denied a peremptory writ of *mandamus.*

If the trial court was correct in its conclusion that the agreement entered into on May 3, 1937, amounted to a contract on the part of each of the relators, that her employment in the Dallas school would cease in May, 1938, and that she should not thereafter be re-employed, it disposes of all questions raised in this case. The trial court said:

"The agreement in question is not aptly worded as it was undoubtedly drawn by a layman. However, I think its meaning is perfectly clear. By it the teacher agreed that at the conclusion of that contract her employment as teacher in the Dallas school should end and that she should not be re-employed. This agreement was knowingly made by the teacher and upon a sufficient consideration, and was an important part of the contract. It seems quite plain that without this agreement the contract would not have been made and these teachers would not have been employed during the school year beginning in August, 1937. These contracts were made before the teachers' tenure law was enacted, and I think are not affected by it. It seems to me that it was competent for these teachers, as a condition of receiving contract of employment in 1937, to agree that their service as teachers in the Dallas school should end with the close of the school year in May, 1938."

We concur in the view of the trial court. While it may be argued that the quoted clause inserted in the contract was no more than a declaration of intention on the part of the school board with reference to its actions in 1938, when consideration is given to the fact that since 1935 the district has been on record as being opposed to the employment of married teachers, that in one case at least re-employment was sought in order to save certain pension rights and that each of the relators understood that her employment was to terminate in 1938, this contention loses force. The teachers knew that the intention of the district as well as the school board with respect to the employment of married women had been expressed over a series of years. No declaration of intention was necessary to make them aware of that fact. Likewise the school board was not bound to re-employ the relators when the contract of May 3, 1937, was made. If it was not such a contract as the trial court held it to be it was a futile act. While it was not aptly phrased, and as the trial court says, was undoubtedly drawn by a layman, it served no other purpose than to record the understanding and agreement between the school board and the relators that when the contract expired their relations with the district were terminated.

The question raised and decided in *State ex rel. Schmidtkunz v. Webb* (1939), 230 Wis. 390, 391, 396, 284 N. W. 6, was one entirely different from the question raised in this case. In that case the contract contained the following clause: "Marriage during the term of this contract shall render same null and void." The relator married during the year and instead of terminating the contract the board continued her employment and paid her her salary to the end of the year. The court said:

"Had the board discharged the plaintiff at that time [the time of her marriage] pursuant to the plain provisions of the contract, we should have a very different question before us. The board disregarded any right that it had to discharge the

plaintiff and permitted her to teach for the remainder of the year."

In this case the board asserted its right under its contract and refused to continue the relators in their employment.

While the trial court reviewed the evidence taken before the board upon the trial of charges of inefficiency as against the several relators, and we do not find it necessary to reconsider that part of the case, our failure to do so must not be construed as holding that such a review may be had in an action of *mandamus*. That matter will be left undetermined until it becomes necessary to a decision. It is to be noted that the statute, sec. 39.40 (3), says that the decision of the school board shall be final.

*By the Court.*—Judgment affirmed.

FOWLER, J. (*dissenting*). The opinion of the court goes upon the proposition that the statements in the teaching contracts of the relators that after the year covered by them "no married woman teacher will be employed. This applies to [each of the relators] also when contract expires," constituted a contractual stipulation on the part of the school district that the relators would not be again employed and deprived the relators of status under the tenure law thereafter enacted.

I am unable to perceive that the statement constitutes a contractual agreement or involves any contractual element. It amounts only to a notice to the relators that because they were married women they would not be re-employed. As the law stood when the contracts were signed, the board was entirely free not to re-employ the relators at their termination. The statement conferred no right upon the district. The district already had the right not to re-employ the relators or continue their employment at the end of their contracts. It gave nothing and it took away nothing.

"A contract is a promise . . . for the breach of which the law gives a remedy, or the performance of which the law in

*some way recognizes as a duty."* Restatement, Contracts, § 1. The district was under no duty to again employ the relators. By not re-employing them it would breach no obligation or duty. The law gave the relators no right of action and therefore no remedy if they were not re-employed. "A contract is a promise, or set of promises, to which the law attaches legal obligation." 1 Williston, Contracts, § 1. The instant contract attached no legal obligation to the district or to the relators respecting re-employment. "Contract, both in its origin and its analysis, is a form of [legal] obligation." 1 Page, Contracts, § 37. "In order to amount to an obligation the legal duty must be to perform or to forbear a definite act." 1 Page, Contracts, § 39. The instant contract created no legal obligation on the part of either party, either of performance or forbearance in respect of re-employment or continuance in employment. The district having no obligation or duty to re-employ the relators, non-re-employment of them was not a contractual matter. It was not a subject of contract. Manifestly, if A has no obligation or duty to employ B or continue him in service he gets nothing by telling B he will not employ him or continue him in employment.

The same result follows from looking at the matter from the standpoint of the relators. Assume, as the trial court did, that the statement quoted implies a promise on the part of the relators that they would not again ask for re-employment. That promise conferred nothing on the district. Whether the relators kept the promise, or whether they did not, the district would not have to re-employ them. By such promise the relators got nothing and the district got nothing. As neither received anything no consideration was given or received. And a consideration is essential to a contract.

It is contended by respondents that the relators by their implied promise not to ask for re-employment waived their rights under the tenure law. A waiver is the intentional relinquishment of a known right. The relators when they

signed their contracts had no right to continue as teachers of the district after the expiration of their contracts. There can be no knowledge of rights when there is no right,—no knowledge of a right when no right exists. No rights under the tenure law existed. Tenure rights therefore were not a subject of waiver. Rights under a tenure law subsequently enacted were not in the minds of the parties. Had the tenure law been in existence when the contracts were made, and the relators had not yet taught long enough to have acquired those rights, but would acquire them by another year's teaching, and they had been employed the coming year under a promise not to assert any claim to tenure rights if they were so employed, we would have a different question. And we would have a different question, if the parties had known of the pending tenure law, and the instant contract had been made on the promise of the relators that they would make no claim under it if it were passed. But no such question is here involved.

I think the record shows that the relators were not given such a hearing as sec. 39.40 (3), Stats., contemplates as the basis for discharge for incompetency. I also think that the facts as presented at the hearing given were insufficient to support a finding of incompetency by the board. So believing, I can find no basis for concurring with the decision of the court and therefore dissent.